(No. 45711.

FRONTIER FORD, INCORPORATED, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Blan T. Childress, Appellee.)

*Opinion filed November 30, 1973.*

HACKBERT, ROOKS, PITTS, FULLAGAR and POUST, of Chicago (DOUGLAS F. STEVENSON, DANIEL P. SOCHA, and WILLIAM M. STEVENS, of counsel), for appellant.

RUSSELL J. GOLDMAN, of Rockford (ROALD A. JACOBSEN, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded 31 5/7ths weeks of temporary total disability benefits to the claimant, Blan T. Childress, for injuries sustained in a fall on the premises of his employer, Frontier Ford, Incorporated. The award was affirmed by the Industrial Commission on review and by the circuit court of Winnebago County on *certiorari*. The employer appeals, contending that the award is contrary to law and against the manifest weight of the evidence.

At the time of his alleged injury on December 30, 1969, the claimant was employed by Frontier Ford to clean new vehicles in preparation for sale. His job included washing vehicles on a wash rack, removing marks from the tires, cleaning the windows, vacuuming interiors and driving vehicles to and from the parking lot. He testified that on the date in question he slipped on some ice and fell on his back while attempting to locate a truck on the lot. After lying on the ground in pain for about five minutes he crawled over to a wall, pulled himself up and stood there for approximately five minutes before continuing his

regular duties which included moving eight trucks in order to get to the truck he was trying to locate. The next morning he was stiff and sore, and his wife had to help him put on his clothes and shoes. Despite the fact that he was becoming more stiff and sore he continued his regular work for Frontier Ford until he was fired for washing a private car on the company premises. The claimant indicated that his services were terminated on January 15, 1970, although the body shop manager for the company testified that he continued to work until January 30, 1970. In any event, there was testimony that during the period he continued to work after the fall he never complained of any back or hip pains and did not ask to see a doctor. After the termination of his employment with Frontier Ford, he applied for unemployment compensation benefits and indicated in his application that he was available for light work.

The claimant testified that two days after his fall he sought medical attention from his personal physician, Dr. Henry Pemberton, who in turn referred him to an orthopedic surgeon, Dr. Forrest Riordan, who examined him within the following week. The claimant's testimony in this regard was contradicted by both doctors who testified that the first time they saw the claimant following the date of the fall was more than three months thereafter. Dr. Riordan related that when he saw the claimant for the first time on March 12, 1970, he took a history and did a physical examination which at first led him to believe that the claimant's complaints of pain were due to a back condition. However, on a later visit it became obvious to Dr. Riordan that the claimant had a hip problem, and X rays taken on April 16, 1970, showed that he was suffering from an arthritic condition of the hips. Medication did not relieve the condition, and on June 5, 1970, Dr. Riordan performed surgery to effect a total left hip replacement using the McKee-Farrar procedure.

There was substantial conflict in the testimony con-

cerning the claimant's condition before and after the December 30, 1969, fall. According to the claimant he was in good health prior to the fall except for a little arthritis in the knees, had never had any trouble with his hip and had never noticed anything unusual about his manner of walking. Two of his co-employees testified to the contrary that both before and after the fall the claimant walked stiff-legged with a slow shuffle and did not bend his legs while cleaning tires. They also observed that he walked no differently after the fall than before. His own physician, Dr. Pemberton, also testified that when he saw the claimant about seven months prior to the fall the claimant was obviously lame, had difficulty kneeling and favored his left hip, which he could not bend or flex. Dr. Riordan testified that the claimant had given him a history of back injuries in 1951 and 1954 and that he had complained of back and leg pains during the past year. All the medical testimony was to the effect that the X rays taken on April 16, 1970, showed an advanced condition of degenerative arthritis which had been in existence for a period of from one to twenty years prior to the date of the X rays.

The theory upon which the claimant sought compensation was that the December 30, 1969, fall, "lighted up" and accelerated his pre-existing arthritic condition of the hips. Dr. Riordan testified on behalf of the claimant that in his opinion the pre-existing condition had been aggravated by the fall. He acknowledged on cross-examination, however, that he did not have a good history of how much pain the claimant had experienced from the date of the fall to the date that he first saw him in mid-March of 1970, and that since he had not seen the claimant immediately after the fall, he had no way of comparing his condition on that date with his condition when the X rays were taken over four months later. He further testified that there were no objective findings of aggravation and that his opinion that the fall had aggravated the claimant's pre-existing condition was based entirely on the subjective history

given him by the claimant. Dr. Graham Kernwein, another orthopedic surgeon, testified as an expert witness for the employer. Although he had not examined the claimant, he stated that his treatment of many patients with degenerative hip arthritis and his study of medical literature in the field led him to the conclusion that degenerative arthritis is a progressive condition which may proceed either rapidly or slowly depending on the individual, but that in no instance is it aggravated by trauma. In response to a hypothetical question, he gave his opinion that the claimant's arthritic condition could not have been aggravated by the fall. In support of his opinion in this regard, he noted that a comparison of the April 16, 1970, X rays with X rays taken subsequently on January 5, 1972, showed that the progression of arthritis in the right hip was normal and not accelerated.

The employer's initial contention, and the only one which we deem necessary to consider, is that the claimant failed to prove objective conditions or symptoms of an accidental injury which aggravated a pre-existing infirmity as required by section 8(b)(7) of the Workmen's Compensation Act. That statute provides in pertinent part that an award for temporary total incapacity can be made only for "such accidental injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." Ill. Rev. Stat. 1971, ch. 48, par. 138.8(b)(7).

In this case, as is true in most cases where an employee seeks compensation on the basis of aggravation of a pre-existing injury, there was conflicting medical testimony as to the determinative question of whether or not there was aggravation. We have held on numerous occasions that the determination of disputed questions of fact, including the determination of the weight to be afforded to conflicting views of medical witnesses, is primarily the function of the Industrial Commission, and

we will not substitute our views for those of the Commission solely because we might have drawn opposite conclusions from the testimony. (*E.g.*, *Chicago Park District v. Industrial Com. (1966), 36 Ill.2d 212; American Rivet Co. v. Industrial Com. (1966), 34 Ill.2d 69; Beck v. Industrial Com. (1965), 32 Ill.2d 148.*) On the other hand, we cannot ignore the mandate of the statute that awards may be made for accidental injuries only when they are proved by competent evidence of which there are or have been objective conditions or symptoms proved. (*Martin Young Enterprises, Inc. v. Industrial Com. (1972), 51 Ill.2d 149.*) Although awards have been upheld when founded in part upon subjective symptoms and history and in part upon objective symptoms (*Quaker Oats Co. v. Industrial Com. (1953), 414 Ill. 326; Olin Industries, Inc. v. Industrial Com. (1946), 394 Ill. 202*), we have held that awards must be set aside if there is a total lack of proof of any objective conditions or symptoms of accidental injury. *E.g., Allis-Chalmers Mfg. Co. v. Industrial Com. (1965), 33 Ill.2d 188.*

Turning to an analysis of the proof in this case, there is no serious dispute as to the fact that the claimant fell while at the place of his employment on December 30, 1969, or that he had a pre-existing condition of advanced degenerative arthritis at the time of the fall. Nor is there, in our judgment, any doubt that his testimony that he went to Dr. Pemberton either one day after, or two days after the fall, and saw Dr. Riordan shortly thereafter was substantially impeached, for both doctors testified to a three-month interval between the fall and first complaint to them. Similarly impeached was his testimony as to his condition prior to the accident and that he had no difficulty walking prior to the fall. The ultimate question, of course, is whether the fall aggravated and accelerated his pre-existing arthritic condition and, more particularly, whether the claimant met his burden of proving objective conditions or symptoms of an injury which caused such

aggravation. Other than the claimant, the only persons who testified with regard to this issue were the claimant's co-employees and Drs. Kernwein and Riordan. The co-employees noted no change in the claimant's condition following the date of the fall. Dr. Kernwein expressed his opinion based on personal experience, a study of medical literature, and an examination of the claimant's X rays, that there were no objective conditions or symptoms of aggravation. The person who perhaps was in the best position to testify as to this matter was the claimant's treating physician, Dr. Riordan, who personally examined claimant and performed surgery on his hip. As we have previously noted, Dr. Riordan specifically stated that his examination of the claimant produced no objective findings of aggravation, and at several points during the course of his testimony on cross-examination, he indicated that his opinion that the fall had aggravated the existing arthritic condition was based entirely upon the subjective history which the claimant had given him. In our opinion, the only conclusion which can be drawn from the record before us is that there was a failure of proof of any objective conditions or symptoms of an aggravating injury, and we therefore have no alternative but to set aside the award of compensation.

The judgment of the circuit court of Winnebago County is reversed and the award of compensation by the Industrial Commission is set aside.

*Judgment reversed; award set aside.*