(No. 55865.-

PEORIA MOTORS, INC., Appellant, v. THE INDUS-TRIAL COMMISSION *et al.* (Edgar L. Patton *et al.*, Appellees).

*Opinion filed September 17, 1982.—Rehearing denied November 24, 1982.*

August M. Mangoni, Ltd., of Chicago (August M. Mangoni and Louis G. Atsaves, of counsel), for appellant.

James L. Hafele, of James L. Hafele, P.C., of Peoria, for appellee Edgar L. Patton.

McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria (Murvel Pretorius, Jr., of counsel), for appellee Peoria Hydromatic Specialists, Inc.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Peoria County confirming an Industrial Commission determination that an injury suffered by claimant was not causally connected with his employment at Peoria Hydromatic Specialists, Inc., the second of claimant's two employers, but was a recurrence of an earlier injury which arose out of and in the course of his job with his first employer, Peoria Motors, Inc. We affirm the decision below.

On February 24, 1978, claimant, Edgar Patton, while at work for appellant Peoria Motors, felt a sharp pain in his lower back which went down both legs. The pain was so severe that claimant was admitted to a hospital, where he stayed for a month. He left the hospital at the end of March 1978 but was readmitted in May, staying this time for three weeks. Claimant did not return to work and received full temporary total disability payments throughout 1978. In August 1978, still suffering pain, he was readmitted to the hospital, where his physician, Dr. Jesse Weinger, diagnosed a ruptured disc and performed a lumbar laminectomy. This abated the discomfort, and on January 2, 1979, Dr. Weinger cleared claimant to return to work full time as an automobile mechanic, with a follow-up visit to the doctor to be scheduled in about three

months. Peoria Motors did not have any work available for him, however, so he left his job there and found a similar one at Peoria Hydromatic, whose owner was a friend of his.

Claimant felt some discomfort when he went to work for Peoria Hydromatic, and he stated that he could not lift heavy objects for his new employer, as he had for Peoria Motors, because of this discomfort. Dr. Weinger found nothing further on a follow-up visit on March 3, 1979, however, and advised claimant that further treatment was not needed. Pain returned in mid-May, though, and on May 14, 1979, after bending over while working on an auto transmission, claimant felt pain severe enough to induce him to see Dr. Weinger again. This time the doctor found a segmental instability of the spine, a condition which he had not noticed before, but did not recommend any new treatment other than rest and local heat, and on May 21 he expressed the opinion that claimant could return to work on a regular basis and that the problem should resolve in time. The problem persisted, causing claimant to miss a few days sporadically, and on August 30, 1979, he asked Dr. Weinger for pain pills. On September 13, 1979, he saw Dr. Weinger again, this visit being prompted by an unusual amount of pain during the preceding week whenever claimant bent forward after lifting an object. Dr. Weinger concluded that the constant strain on claimant's already weakened back was causing degenerative disc disease and recommended further surgery. On September 25 claimant told Dr. Weinger that he "couldn't take it any more" and terminated his employment on the doctor's advice. The next day he entered the hospital, and on September 28 a second laminectomy and a spinal fusion were performed. Recovery thereafter was fairly rapid; Dr. Weinger reported no pain by November 26, 1979. Claimant had to wear a cast following the surgery, however, and although this was apparently removed by January 1980 he

still had to wear a brace and did not return to work for Peoria Hydromatic.

Edgar Patton received his regular salary from Peoria Hydromatic for missed days through May 1979. He did not receive any temporary total disability payments or medical benefits from either Peoria Motors or Peoria Hydromatic thereafter, however, and he filed a compensation claim against both employers. At the arbitrator's hearing Dr. Weinger's deposition was introduced into evidence. In the deposition, he admitted that the surgical procedure he performed on claimant in 1978 was insufficient and that in retrospect he should have performed the fusion then; he also admitted that degenerative disc disease is aggravated by hard work and that he should have advised claimant · earlier not to lift heavy objects. In July 1980 the arbitrator awarded claimant 44³/₇ weeks' temporary total disability compensation from Peoria Motors and 30²/₇ weeks' compensation from Peoria Hydromatic. The Industrial Commission found that claimant's 1979 as well as his 1978 injuries were traceable to a single injury suffered while working for Peoria Motors and awarded claimant 75⁴/₇ weeks' temporary total disability compensation plus medical expenses from Peoria Motors. Peoria Motors here appeals the Industrial Commission's finding that claimant's 1979 injuries were chargeable to it rather than to Peoria Hydromatic as being against the manifest weight of the evidence.

An employer takes his employees as he finds them (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17), and an aggravation of a preexisting ailment is a compensable injury if it arises out of and in the course of employment (*Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150, 155 (back injury); *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 240 (heart disease)). However, it is the responsibility of the Industrial Commission to find facts and draw the inferences neces-

sary to enable it to say that a particular accident did or did not arise out of and in the course of work. Its determination will not be set aside unless contrary to the manifest weight of the evidence. *Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535.

In this case there is ample evidence in the record to support a conclusion that no aggravating injury occurred while claimant was working for Peoria Hydromatic. The only doctor to testify expressed the opinion that the spinal instability which he diagnosed in 1979 actually predated claimant's employment with Peoria Hydromatic and that the spinal fusion which was performed in October 1979 should have been performed at the August 1978 operation, also before the Peoria Hydromatic employment began. When it finally was performed, the spinal fusion cured the recurring pain. The only other witness to testify, the claimant himself, stated that he had back pains from the time he first started work for Peoria Hydromatic, that he always felt discomfort when he bent over or lifted a heavy object, and that the discomfort "seemed like it got worse and worse" as time went on. Claimant did not isolate any one incident as causing greater pain than any other; the most he could point to were occasions on which his back pain flared up with exertion more than at other times. From this testimony, the Industrial Commission could have concluded either that no distinct accident befell claimant while he was working for Peoria Hydromatic or that his back condition was so susceptible to aggravation that any exertion would have been overexertion. Either inference would have been permissible, if not natural. In neither case would Peoria Hydromatic be liable under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.2); an accident may not be the product of speculation but must be "traceable to a definite time, place and cause" (*Laclede Steel Co. v. Industrial Com.* (1955), 6 Ill. 2d 296, 300; *Matthiessen & Hegeler Zinc Co. v. Industrial*

*Board* (1918), 284 Ill. 378, 383), and an accident which occurs in the course of employment does not arise out of the employment if the claimant's condition prior to the accident had deteriorated to the point where any normal activity could have aggravated it (see, *e.g., Rice v. Industrial Com.* (1980), 81 Ill. 2d 544).

Peoria Motors notes that claimant withdrew his claim against Peoria Hydromatic after the arbitrator rendered his award and objects to the fact that the Industrial Commission did not inquire, as the arbitrator apparently had, into the possibility that claimant's friendship with the owner of Peoria Hydromatic was causing him to side with that employer against Peoria Motors. The effect of deeper inquiry would probably have been at most to discredit claimant's testimony. Dr. Weinger's testimony, which also supported Peoria Hydromatic, would have remained. The evidence suggesting complicity between the claimant and Peoria Hydromatic is slight at best, and is certainly not so overwhelming as to render the Commission's decision to believe Dr. Weinger's testimony arbitrary. In addition, claimant withdrew his claim against Peoria Hydromatic after that company appealed the arbitrator's award. This sequence of events might have justified the conclusion that claimant felt more comfortable in the appeal arguing one continuing injury than urging two distinct injuries, particularly in view of Dr. Weinger's conclusion that the earlier injury accounted for all of the later symptoms. The Industrial Commission was entitled to attribute claimant's conduct to a desire to simplify the proceedings and speed his own recovery; claimant's change in tactics did not require a finding that there was a conspiracy.

Finally, Peoria Motors takes issue with the fact that the Industrial Commission's order states that "[t]here is no evidence" that a work-related accident befell claimant while working for Peoria Hydromatic. It points out that there was some evidence that such an accident occurred

and seeks reversal of the award on the ground that, by finding "no evidence," the Industrial Commission rendered a decision on less than all of the evidence in the record, something which it is not permitted to do. We acknowledge that there is some indication in claimant's testimony that he lifted heavy objects on several occasions in 1979 and that he felt worse after so doing on some occasions than on others, and we agree that this could be read as some evidence that his condition had stabilized enough to be meaningfully exacerbated by his work for Peoria Hydromatic. We also note, in this regard, that Dr. Weinger remarked at one point that claimant "may have been aggravating his condition" while working for Peoria Hydromatic. However, we do not conclude from the Industrial Commission's use of the words "[t]here is no evidence" that it missed these pieces of evidence or failed to consider the possible inferences that could have been drawn from them. It is at least as probable that the words "no evidence" were used to embody the conclusion which the Commission drew in the end, the sum total of all the inferences it drew based on all the evidence. The Industrial Commission's unusually detailed summary of the case set forth in its order mentions the fact that Dr. Weinger gave claimant a clean bill of health in May 1979 and also states that claimant admitted that he lifted heavy weights on occasion for Peoria Hydromatic; the indication is that the Commission considered these factors along with the other evidence, not that it ignored them. The fact that the owner of Peoria Hydromatic knew of claimant's condition when he hired him and paid him for missed days through May 1979 may not, as Peoria Motors urges, have been considered by the Industrial Commission, but it is of no significance in a case such as this where bad faith is not alleged and the only inquiry is whether an accident occurred while claimant was working for his current employer or a previous employer. In the absence of a further

demonstration that the Industrial Commission missed relevant evidence we will not assume that it did, and we affirm the circuit court judgment confirming the Commission's decision.

*Judgment affirmed.*