INTERLAKE STEEL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Charlene Elzy, a/k/a Charlene Dyson, Appellee).

First District (Industrial Commission Division)   No. 1—84—2661WC

Opinion filed September 18, 1985.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Robert B. Ulrich, of counsel), for appellant.

Gordon & Gordon, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Charlene Elzy, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for injuries allegedly sustained while in the course of her employment with respondent, Interlake Steel Company. Prior to the hearing petitioner remarried, and her married name is Charlene Dyson.

The arbitrator awarded petitioner eight weeks of temporary total disability benefits under section 8(b) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)) and 47 weeks of permanent partial disability benefits under section 8(e)(10) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(e)(10)) based upon a finding that petitioner had lost 20% of the use of her left arm. Respondent petitioned the Industrial Commission for review of the decision of the arbitrator; and on review, the Industrial Commission, with Commissioner Ralph W. Miller, Jr., dissenting, affirmed the decision of the arbitrator. Respondent sought review of the decision of the Industrial Commission in the circuit court of Cook County, which confirmed the decision of the Industrial Commission. Respondent has appealed to this court. The sole issue raised by respondent on appeal is whether the decision of the Industrial Commission was contrary to the manifest weight of the evidence.

Petitioner is a 5 foot 3 inch, 200 pound female. She began work for Interlake Steel Company on February 10, 1977, as a general laborer. Initially, her duties required that she lift and stack coils of steel rod weighing an average of 120 pounds. Petitioner is left-handed. While at work about one week after beginning her job, petitioner experienced a sharp pain in her left arm. She reported this to her supervisor; however, no action was taken. Although the pain persisted, petitioner received no treatment for the pain and lost no time from work. Petitioner continued to work lifting and stacking coils until May or June of 1977 when she was transferred to a different department. Her new duties required her to operate a heavy-duty hoist and with it to lift and stack coils of steel rod weighing in excess of 10,000 pounds. About three weeks after she began working in this department small bumps began to appear in petitioner's upper left arm and the flesh of her arm would quiver. She reported this to her supervisor. On this occasion, petitioner sought medical care from her family physician, Dr. H. Chaung. Dr. Chaung examined her arm and prescribed pain medication. Petitioner continued to be seen by Dr. Chaung every

two weeks on a follow-up basis. On November 27, 1977, petitioner stopped working; and on December 4, 1977, she was hospitalized by Dr. Chaung to undergo surgery for the removal of two lipomas, or tumors of fatty tissue, in her upper left arm and shoulder. Petitioner was discharged from the hospital on December 11, 1977, and was released by Dr. Chaung to return to work on January 22, 1978. This eight-week absence from work forms the basis of the arbitrator's award for temporary total disability. In his discharge summary Dr. Chaung stated that the tumors which were removed had existed for "a couple of years." The operation left scars on petitioner's upper left arm and shoulder. After the operation petitioner complained of a frequent cold sensation in her arm and some residual numbness in her hand which caused her to favor the arm. Petitioner continued to work until April 30, 1980, when she was laid off.

Petitioner was examined by Dr. Hyman J. Hirshfield and Dr. Robert C. Busch. The doctors examined petitioner only once on August 17, 1978. Their examination was performed at the request of petitioner's counsel. The doctors recorded that petitioner complained of pain, stiffness and weakness of the left arm and hand. The doctors performed X-ray and physical examinations. The X-ray photographs revealed nothing abnormal. The physical examination revealed the existence of the post-operative scarring and some swelling and loss of mobility of the left arm. The doctors diagnosed that petitioner had suffered a strain injury of the upper left arm and that the pain and loss of mobility were the result of the injury. The doctors' prognosis was that petitioner would continue to experience pain and the loss of mobility.

Petitioner was also examined by Dr. George J. Cooper. Dr. Cooper examined petitioner only once on August 9, 1979. His examination was performed at the request of respondent. Dr. Cooper performed X-ray and physical examinations. The X-ray photographs revealed nothing abnormal. The physical examination revealed the existence of the post-operative scarring but no impairment in mobility. The doctor did not believe petitioner suffered any loss of mobility. The doctor also did not believe that the existence of the two tumors which were removed was causally related to petitioner's employment.

Respondent contends that the Industrial Commissions' findings (1) that petitioner sustained accidental injuries and (2) that her condition was causally related to that accident are manifestly against the weight of the evidence.

The Industrial Commission heard no new evidence and adopted the findings of the arbitrator. The arbitrator found that on February

15, 1977, petitioner sustained accidental injuries arising out of and in the course of her employment. Petitioner testified that she first noticed the pain in her arm about a week after February 10, when she started work, or sometime around February 17 or 18. The reason for the arbitrator's choice of February 15, 1977, as the date of the accidental injuries is not apparent from the record.

■ Respondent points out that an accidental injury must be traceable to a definite time, place and cause. (*Peoria Motors, Inc. v. Industrial Com.* (1982), 92 Ill. 2d 260, 265, 442 N.E.2d 144, 146.) Respondent then urges that because there is no evidentiary basis to support the arbitrator's choice of dates, there is no evidence to satisfy this time, place and cause requirement. We disagree. Petitioner's testimony that she experienced a sharp pain in her arm while engaged in lifting coils about a week after she started work is sufficient to trace the occurrence to a definite time, place and cause, even though it may be a time other than that chosen by the arbitrator. A claimant may recover on his or her own testimony without corroboration. *Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 41, 405 N.E.2d 796, 798.

■ Respondent next argues that there is insufficient evidence to support the finding that petitioner's condition was causally related to her alleged accidental injury. It is important to note that petitioner suffered from two apparently separate maladies. One was the presence of the two lipomas in her left arm; the other was the weakness and loss of mobility of her left arm. A close reading of respondent's brief discloses that it takes issue only with the finding that there was a causal relationship between the presence of the two lipomas and the alleged accident. The report of Dr. Hirshfield and Dr. Busch provides a sufficient evidentiary basis for the finding that petitioner suffered a strain injury to her left arm in the course of her employment which resulted in pain, weakness and loss of mobility in her left arm. This report had been received into evidence based upon a stipulation that were the authors called to testify they would testify to a causal connection between the findings therein and the incident. However, other than to mention their observation of post-operative scarring, the report of Dr. Hirshfield and Dr. Busch makes no findings with regard to the tumors which were removed. Indeed, other than petitioner's own testimony that she noticed the bumps on her arm during the time she was employed by respondent, there is no evidence that the tumors were work related. Further, it was Dr. Cooper's opinion that there was no causal relationship between the tumors and petitioner's employment, and Dr. Chaung's discharge summary stated that the pres-

ence of the tumors predated petitioner's employment. Although medical testimony as to causation is not necessarily required (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 250, 356 N.E.2d 28, 31), where the question is one within the knowledge of experts only and not within the common knowledge or comprehension of laymen, expert testimony is necessary to show that a claimant's work activities caused the condition complained of. (See *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 442-43, 433 N.E.2d 649, 651.) There is simply no expert evidence to show the petitioner's work activities caused the two tumors. The expert evidence on the subject indicates that the tumors existed before petitioner commenced work for respondent and that the tumors were not related to her employment.

■■ ■ For the reasons stated, we hold that the award of temporary total incapacity benefits on account of petitioner's hospitalization for the removal of the two tumors to be against the manifest weight of the evidence. As to the award of compensation for permanent partial disability on account of petitioner's 20% loss of use of her left arm, the record does not indicate whether or not, and if so to what extent, the effects of the tumors or their removal were reflected in the award of permanent partial disability. If a decision of the Industrial Commission is set aside, and the facts found in the proceedings before the Commission are sufficient, a reviewing court may enter such decision as is justified by the law, or may remand the cause to the Industrial Commission for further proceedings. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(f)(2).) In our opinion, because the determination of the extent of disability is peculiarly within the province of the Industrial Commission, this cause should be remanded to the Industrial Commission for further proceedings to determine the extent of disability, if any, absent any consideration of the effects of the tumors or their removal.

We therefore reverse the judgment of the circuit court of Cook County. The award of temporary total disability benefits is set aside. The award of permanent partial disability benefits is vacated, and this cause is remanded to the Industrial Commission for further proceedings to determine the extent of disability as provided herein.

Reversed with instructions.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.