LILLIAN NUNN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (General Electric Company, Appellee).

Fourth District (Industrial Commission Division) No. 4—86—0463WC

Opinion filed June 24, 1987.

Scheele, Cornelius & Associates, Ltd., of LaGrange (David C. Harrison, of counsel), for appellant.

Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville (John F. Martin, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant Lillian Nunn sought benefits for a back injury allegedly sustained while working for respondent General Electric Company. An arbitrator awarded benefits. On review, the Industrial Commission reversed the arbitrator's decision, finding that claimant failed to prove she sustained accidental injuries arising out of and in the course of her employment. The circuit court of Vermilion County confirmed the Commission's decision, and claimant appeals.

Claimant was the only witness to testify at a hearing before the arbitrator. In 1974, claimant injured her back while working for respondent. Dr. Carl Belber performed back surgery on claimant twice that year. She returned to work with a weight restriction which claimant believed was 20 pounds. Claimant testified that she gave a note to respondent's nurse from the doctor reflecting that restriction. After the 1974 surgeries, claimant continued to experience back pain and pain in the right leg. Her compensation claim for the 1974 back injury was resolved by settlement contract and was paid.

Between 1976 and 1981, claimant had some back pain which was relieved by aspirin. She received no medical treatment for her back during that time. At work, claimant was assigned duties within her weight restriction "for a while."

In February 1981, respondent assigned claimant to "racking" duties. This job required claimant to lift five ballasts at a time. Each ballast weighed 2½ to 4 pounds for a total of 12½ to 20 pounds. She also pushed racks of ballasts down a conveyor belt. Claimant estimated that each rack weighed close to 30 pounds. She testified that she told her supervisor the lifting exceeded the weight limit, but that her duties were not changed. Seven months later, in September 1981, claimant began experiencing discomfort in her low back. The company doctor taped her back, and claimant saw no other doctor that month.

On October 1, 1981, claimant noticed numbness down her right leg to her foot, a tingling sensation from her right knee to her foot, and continued low back pain. The supervisor agreed to allow claimant and another employee, who was clipping leads, to switch jobs every two hours during the day. Claimant testified that she still had pain when she was clipping leads, but that it was less painful. On October 9, 1981, during a two-hour racking shift, claimant noticed that the pain was worse. She worked the rest of the day, and the supervisor refused to take her off racking duties completely. Claimant has not returned to work since that day.

On October 10, 1981, claimant telephoned Dr. Belber. Dr. Belber's records were admitted into evidence. Claimant had surgery for a herni-

ated disc in June 1974 and again in October 1974. On January 20, 1975, she had some complaints but was recovering well. On October 9, 1975, she reported having "more and more back pain and pain in her right calf, just as before our first operation, but the intensity of the pain is much less ***. She tires easily and at times has severe enough pain that she takes a lot of medication and feels like crying." An examination revealed positive straight leg raising tests on the right side with fairly significant pain in the right calf and thigh, along with mild tenderness of the sciatic nerve. Dr. Belber suspected a recurrence of her prior problems, but claimant declined further myelograms or other operations. Dr. Belber concluded, "I feel Mrs. Nunn will seek us out at a point where she really is disabled and needs something done ***."

On October 12, 1981, claimant returned to Dr. Belber, who noted that claimant had pain and was having difficulty getting around. She had been experiencing low back pain and numbness in her right leg for one month. Dr. Belber noted that claimant previously "underwent removal of a herniated disc at L4-S1 on the right side for symptoms somewhat similar to that." Dr. Belber concluded that claimant had "recurrent low-back syndrome, originally incurred at work." He told claimant not to work for three weeks and to begin physical therapy. Dr. Belber referred claimant to her personal physician, Dr. Peter Heatherington, who referred her to Dr. Peter Hall, a neurosurgeon.

Claimant introduced Dr. Hall's records into evidence. Dr. Hall wrote that claimant's complaint of back pain and right sciatica began in 1975. After two operations, she did fairly well, though she had back pain and was unable to lift. Claimant complained of a two-month history of low back pain radiating down both of her legs. She could perform straight leg raises up to 10 degrees and had hypalgesia at L-5 bilaterally. Dr. Hall agreed with Dr. Heatherington's diagnosis of probable recurrent lumbar disc problems. On December 22, 1981, Dr. Hall performed a bilateral L3-L4 discectomy. Twice during 1981, Dr. Hall wrote that claimant continued to complain of recurrent back pain, although examinations were normal. On November 22, 1982, Dr. Hall wrote that symptoms of lumbar disc pain recurred after claimant lifted a laundry hamper bag at home.

In February 1983, Dr. Hall wrote to Dr. Heatherington that claimant moved around in a totally pain-free fashion, but complained of continual back pain. "I am suspecting that Lillian is at this point attempting to avoid returning to work at General Electric. I feel that she is medically fit to resume employment at this time" with some restrictions, and within six months could work with no restrictions. On June 3, 1983, Dr. Hall wrote that he intended to release claimant for work as

of September 1, 1983, with a restriction of no repetitious stooping or lifting over 20 pounds. He observed that claimant was "rather reluctant to consider working." On June 24, 1983, Dr. Hall stated that claimant could return to work at any time. When claimant brought Dr. Hall's notes to work in September 1983, she was informed that she had been terminated because she had been off work for over one year. She had recall rights under the union contract and was 80th on the list of people eligible to be recalled.

Claimant introduced into evidence records for her 1981 hospital admissions. An X-ray report of November 16, 1981, stated that X rays revealed "minimal posterior element and facet degenerative disease." A hospital nurse's note dated November 12, 1981, stated that claimant reported her back pain had begun two months earlier, in September 1981, and was "believed related to lifting a 15 pound object."

Claimant also introduced into evidence a letter from Dr. M. Adeli, who saw her at respondent's request on February 5, 1983. Dr. Adeli stated that claimant reported having two operations in 1975, after which she returned to work but continued having backaches. Dr. Adeli concluded that claimant was able to perform light to moderate activities, with no heavy lifting or long drives, and found she was able to lift up to 10 pounds. Dr. Adeli noted osteoarthritic changes at L5-S1.

Respondent introduced into evidence the records of the company nurse during the period of 1977 through 1981. The nurse noted on September 30, 1981, that claimant said she saw her doctor regarding back pain. Respondent also introduced into evidence the settlement contract for claimant's prior back claim. The contract reflected that claimant suffered a 25% loss of the use of her right leg.

The arbitrator found that on October 9, 1981, claimant experienced pain while moving a 35-pound package and that this was an accident precipitating the aggravation of an old condition. On review, the Commission reversed, finding that there was no evidence of a specific accident traceable to October 9, 1981; that claimant had a prior history of back problems; that the medical histories failed to corroborate claimant's account of the onset of her symptoms; and that there was a lack of medical evidence as to causal connection between work activities and claimant's condition.

■■■ Claimant contends that the Commission's decision is against the manifest weight of the evidence. She argues that the evidence shows her condition in 1981 was an aggravation, and not a continuation, of the preexisting condition which was caused by the original injury in 1974. When a preexisting condition is aggravated by employment, it may constitute a work-related accident. (*Peoria Motors v.*

*Industrial Com.* (1982), 92 Ill. 2d 260, 442 N.E.2d 144; *Cook Co. v. Industrial Com.* (1977), 68 Ill. 2d 24, 368 N.E.2d 1292.) The existence of health problems of an employee prior to a work-related injury neither deprives the employee of a right to benefits nor relieves the employee of the burden of proving a causal connection between the employment and the subsequent health problems. (*Neal v. Industrial Com.* (1986), 141 Ill. App. 3d 289, 490 N.E.2d 124.) Claimant bears the burden of showing that the preexisting condition was aggravated by the employment and that the aggravation occurred as a result of an accident which arose out of and in the course of her employment. (*Lawless v. Industrial Com.* (1983), 96 Ill. 2d 260, 449 N.E.2d 850; *Lyons v. Industrial Com.* (1983), 96 Ill. 2d 198, 449 N.E.2d 1323; *Allis-Chalmers Manufacturing Co. v. Industrial Com.* (1961), 23 Ill. 2d 497, 179 N.E.2d 1.) It is for the Commission to decide whether a preexisting condition has been aggravated. (*Rice v. Industrial Com.* (1980), 81 Ill. 2d 544, 410 N.E.2d 860; *Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 356 N.E.2d 28.) The decision of the Commission will not be disturbed unless it is against the manifest weight of the evidence. *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 433 N.E.2d 671.

Claimant contends that she proved an accidental injury under the "repetitive trauma" concept, a principle recently recognized by our supreme court. (*Peoria County Belwood Nursing Home v. Industrial Com.* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) Even under that theory, however, the injury must be work-related. Here, the Commission was entitled to find that claimant failed to show her condition is the result of a work-related injury.

■ Claimant maintains that her condition in 1981 resulted from seven months of working with objects weighing more than 20 pounds. It is not clear whether claimant performed other jobs requiring lifting between 1975 and 1981. She merely testified that after 1975 she worked on jobs within her weight restriction "for a while." While claimant may have had a weight restriction, she is uncertain if it was in fact 20 pounds, and no medical record is before us which might verify her allegation of a 20-pound restriction imposed by a doctor prior to 1981. There is no evidence of any doctor's order restricting claimant's activities after the second operation in 1974. Dr. Belber's notes contain an illegible comment regarding a weight restriction, but that note was made before claimant's second operation in 1974, and thus it is irrelevant. Notes by Dr. Belber written in 1975 refer to claimant's employment as a waitress, but do not refer to any weight restrictions. Claimant testified that she gave respondent's nurse a doctor's note

regarding a weight restriction upon returning to work after the 1974 surgeries. Dr. Belber was her treating physician at the time, but his notes do not refer to claimant's employment by respondent. Instead, they refer to claimant's job as a waitress.

Furthermore, claimant's initial complaint to her supervisor in February 1981 was that the lifting exceeded her weight limitation. The objects claimant was lifting on the racking job weighed less than 20 pounds, which did not exceed the restriction claimant alleges was imposed upon her by a doctor. Claimant also pushed racks, but was unsure of the weight of a rack, estimating that they were "close to" 30 pounds. There was no evidence presented to establish that pushing over 20 pounds on a conveyor belt is the equivalent of lifting 20 pounds. See *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 433 N.E.2d 649.

■ In addition, claimant testified that her back "still hurt" when she stopped racking, which she points to as the cause of her disability, and began clipping, which apparently does not involve lifting or pushing. Claimant must show by a preponderance of the evidence that she is entitled to recover. (*Keystone Steel & Wire Co. v. Industrial Com.* (1978), 73 Ill. 2d 269, 383 N.E.2d 216.) She must produce competent evidence of objective conditions or symptoms to support her claim. (*Frontier Ford, Inc. v. Industrial Com.* (1973), 55 Ill. 2d 556, 304 N.E.2d 610.) Without such evidence, the Commission could properly find that claimant failed to prove by a preponderance of the evidence that the racking duties, as she contends, caused her present disability.

■ We also note that the hospital nurse's report dated November 12, 1981, reflects claimant's belief that her pain was the result of lifting one 15-pound object. In addition, Dr. Hall noted in November 1982 that merely lifting a laundry hamper at home caused a recurrence of claimant's symptoms. In finding no causal connection between claimant's work and her disability, the Commission could infer from the record that claimant did not engage in any unusual or strenuous activity prior to onset of her pain. See *Downs v. Industrial Com.* (1986), 143 Ill. App. 3d 383, 493 N.E.2d 595; see also *Doyle v. Industrial Com.* (1983), 96 Ill. 2d 364, 449 N.E.2d 1352.

■ Furthermore, in the cases relying on the repetitive trauma concept, the claimant generally relies on medical testimony establishing a causal connection between the work performed and claimant's disability. (See, *e.g., Peoria County Belwood Nursing Home v. Industrial Com.* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 111 N.E.2d 351.) In the present case, no direct medical testimony was introduced as to the cause of

claimant's back problems in 1981. The Commission is not precluded from finding against claimant on the issue of causation of her disability where claimant and the employer choose not to offer medical opinions on the issue. (See *Steiner v. Industrial Com.* (1984), 101 Ill. 2d 257, 461 N.E.2d 1363.) Although medical testimony as to causation is not necessarily required (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 356 N.E.2d 28), where the question is one within the knowledge of experts only and not within the common knowledge of laypersons, expert testimony is necessary to show that claimant's work activities caused the condition complained of. (*Interlake Steel Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 740, 483 N.E.2d 979.) Cases involving aggravation of a preexisting condition primarily concern medical questions and not legal questions. (*Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 459 N.E.2d 963, quoting *Long v. Industrial Com.* (1979), 76 Ill. 2d 561, 394 N.E.2d 1192.) This is especially true in repetitive trauma cases. (See *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 433 N.E.2d 649.) In a repetitive trauma case, there must be a showing that the injury is work-related and not the result of a normal degenerative aging process. (*Peoria County Belwood Nursing Home v. Industrial Com.* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) The 1981 X-ray report and 1981 surgical report refer to claimant's degenerative disc disease. Expert testimony might have established whether or not this means the condition of claimant's back in 1981 developed over a period of several years, before she began her racking duties. Here, there is no direct expert testimony to show that claimant's work activities caused the 1981 back condition.

■ The medical records do not contain evidence which would require us to find the Commission's decision is against the manifest weight of the evidence. The only evidence connecting the back condition to the work duties is claimant's own testimony. It is the function of the Commission to judge the credibility of witnesses, determine the weight to be given to their testimony, and to draw reasonable inferences from that testimony. (*Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 459 N.E.2d 963.) The Commission need not award compensation merely because claimant's version of the relevant events is undisputed. (*Smith v. Industrial Com.* (1983), 98 Ill. 2d 20, 455 N.E.2d 86.) The Commission was entitled to find no causal connection between claimant's condition in 1981 and her employment.

■ The Commission also could have found that claimant's testimony lacked credibility. Dr. Hall noted in February 1983 that he believed claimant was medically fit to work, but was attempting to avoid a return to work. Claimant does not deny this, but states that her re-

luctance to return to work is "understandable in light of the weight and physical motion requirement of the job to which she would have to return." Furthermore, while claimant maintains she saw no one but the company doctor in September 1981, the company nurse noted that claimant saw her own physician that month.

 Additionally, the Commission properly could choose to give little weight to the fact that claimant sought no medical treatment for six years, from 1975 to 1981. The right to recover benefits cannot rest upon speculation or conjecture. (*County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 368 N.E.2d 1292.) Claimant testified that she had pain in her back and right leg during that time. Moreover, medical records show that her pain was not entirely relieved by the 1974 surgery. Almost one year after that surgery, claimant reported to Dr. Belber that she had severe pain in her back and right leg, "just as before her first operation," and that at times she took a great deal of medicine and felt like crying because of the severe pain. An examination confirmed claimant's complaints, and Dr. Belber suspected a recurrence of her prior problems. Dr. Belber concluded that claimant would return for treatment only "at a point where she really is disabled and needs something done." When claimant returned for treatment in 1981 Dr. Belber found the symptoms "somewhat similar" to the symptoms manifested six years earlier. Dr. Belber concluded it was "recurrent low back syndrome, originally incurred at work [in 1974]." In October 1981, Dr. Hall diagnosed recurrent lumbar disc problems. A 1981 hospital record states that claimant "originally had the onset of back pain and right sciatica" in 1974, and that she continued to have back pain after the 1974 surgery, In 1983, Dr. Adeli stated that claimant reported having continued backaches after the surgery in 1974. In the face of this evidence, the Commission was entitled to disbelieve claimant's testimony that she first began having pain only after seven months of performing the racking duties. The Commission could properly find that claimant's disability was a continuation, and not a reaggravation, of her preexisting condition.

Claimant's reliance on *Interlake Steel, Inc. v. Industrial Com.* (1985), 136 Ill. App. 3d 740, 483 N.E.2d 979, is misplaced. In that case, claimant experienced pain in her arm within one week of starting her job with respondent. There was no relevant preexisting condition. Several doctors found a causal connection between claimant's work and the pain, weakness and loss of mobility in her arm. In the present case, claimant had a preexisting back condition; did not notice back pain until seven months after beginning her job; and offered no medical testimony to support a finding of causal connection between her work and

her disability.

 Even if we found the injury was work-related, however, the Commission could conclude that claimant failed to meet her burden of proof. An employee seeking benefits for gradual injury due to repetitive trauma must meet the same standard of proof as a claimant alleging a single, definable accident. Claimant must prove a precise, identifiable date when an accidental injury manifested itself, *i.e.*, the date on which both the fact of the injury and the causal connection to claimant's work would have become plainly apparent to a reasonable person. (*Peoria County Belwood Nursing Home v. Industrial Com.* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) The difficulty in proving that an injury resulting from repeated trauma arose out of and in the course of employment poses a serious burden for a claimant. *Peoria County Belwood Nursing Home v. Industrial Com.* (1985), 138 Ill. App. 3d 880, 487 N.E.2d 356, *aff'd* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.

Claimant maintains that her back pain gradually worsened due to repetitive trauma during a seven-month period. She first noticed discomfort in September 1981. The pain worsened on October 1, 1981. It "still hurt" when she stopped racking and began clipping, and was worse on October 9 during the two-hour period of time when she was racking. Claimant points to no single lifting accident and urges that the injury is a result of the repetitive pushing of racks weighing over 20 pounds, although she is unsure of the actual weight of the racks.

 In contrast to claimant's assertions, the nurse's notes of November 12, 1981, indicate that claimant's pain began in mid-September 1981 as a result of lifting one 15-pound object. As we have noted, it is the province of the Commission to judge a witness' credibility. (*Butler Manufacturing Co. v. Industrial Com.* (1986), 140 Ill. App. 3d 729, 489 N.E.2d 374.) The Commission could properly conclude that claimant failed to fix a definite time, place and circumstance when an accidental injury manifested itself.

We hold that the Commission's finding that claimant failed to prove she sustained an accidental injury arising out of and in the course of her job with respondent is not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Vermilion County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.