14 January 2000

 NO. 3-99-0044WC

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 INDUSTRIAL COMMISSION DIVISION

________________________________________________________________________

BENJAMIN FIERKE, ) Appeal from

Appellant, ) Circuit Court

v. ) Will County

THE INDUSTRIAL COMMISSION, et al. ) No. 98MR667

(Transport Service, Inc., Appellee.) )

 ) Honorable

 ) William Penn,

 ) Judge Presiding.

________________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:

Claimant, Benjamin Fierke, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 
et
 
seq
. (West 1992)) for injuries allegedly sustained while in the employ of Transport Service, Inc., employer.  The arbitrator determined claimant's injuries arose out of and in the course of his employment and awarded 2 4/7 weeks of temporary total disability, medical expenses and 38 weeks of permanent partial disability.  On review, the Industrial Commission (Commission) reversed the decision of the arbitrator finding no causal connection between claimant's condition of ill-being and his employment.  The circuit court of Will County confirmed the decision of the Commission.  Claimant appeals contending
 the decision of the Commission, as confirmed by the circuit court of Will County, is against the manifest weight of the evidence.  We agree.

Claimant worked for employer as a commercial tank truck driver.  Claimant mainly drove local routes but once a week made long runs to either Indiana, Michigan, Wisconsin or Minnesota.  He worked between 50 and 80 hours per week, spending between 30 and 35 hours a week driving.  The balance of his work time was spent filling and emptying the tanker.  While driving, claimant used his right hand to shift gears.  At the time of arbitration claimant had worked for employer some twenty-four years.

In the fall of 1992, claimant noticed that while driving his right hand would go completely numb.  At night his hand would become so numb or so painful that he could not sleep.  During a doctor's visit for an unrelated problem on September 18, 1992, claimant complained of his problems with his right hand.  On September 22, 1992, claimant underwent an electromyogram nerve conduction test (EMG) which revealed median nerve entrapment or carpal tunnel syndrome.  On September 25, claimant was again examined by Dr. Augustin for the unrelated medical problem.  According to the doctor's office notes, claimant argued with the doctor that his unrelated problem was work related.  The doctor disagreed.  At the end of the notes for that day, Dr. Augustin commented: "Plan - Refer to Ortho. M.D. for carpal tunnel synd."  Directly under this comment is written and circled: "This is related to work 
directly
 - under Workmen's Comp."  Claimant was next examined by Dr. Loughran who recommended surgical release of the carpal tunnel.  Employer then requested that claimant be examined by another physician, Dr. Shermer, in October 1992.  Dr. Shermer agreed that claimant had carpal tunnel syndrome and needed surgery.  In his report, Dr. Shermer noted: "The relationship to [claimant's] work duties is not clear, although the theory of cumulative and repetitive stress, over a period of time, has been used to link these conditions of trauma at work."  Surgery was ultimately performed on June 3, 1993, by Dr. Loughran.  Claimant returned to full duty without restrictions on June 21, 1993.  Claimant testified he still experiences pain and numbness in his hand although reduced.  He further reported reduced strength over all and intermittent pain at night and when shifting the truck.  

Claimant's examining physician, Dr. Charles Carroll, "a renowned hand specialist," found evidence of industrial impairment.  As to causation, he noted Dr. Augustin's comments that claimant's carpal tunnel syndrome was related to his occupation.  Dr. Carroll did not challenge or otherwise contradict this opinion.

Employer presented some evidence through cross-examination of claimant that he had done some remodeling work on five rooms of his house in and prior to 1992 consisting primarily of painting and trim work.

The arbitrator concluded claimant's repetitive trauma accident arose out of and in the course of his employment and awarded benefits.  The Commission, with one dissent, concluded otherwise and reversed the decision of the arbitrator.  The Commission specifically stated:

A key element to proving a repetitive trauma theory is producing clear and detailed evidence of the manner and means in which the work activities alleged to have constituted the repetitive trauma were performed.  It does not appear from the record that the Petitioner presented a clear and detailed evidence of the manner and means in which the work activities alleged to have constituted the repetitive trauma were performed.  The Petitioner merely stated that shifting gears was the cause of his carpal tunnel syndrome.  He did not describe the pressure needed to shift the gears, how long the gears had to be held, how often he shifted the gears in an eight hour day, any vibration caused by the gear shift, etc.  Additionally, the medical evidence presented did not include any opinion from any provider that the Petitioner's carpal tunnel syndrome was causally related to his occupation.  In a repetitive trauma *** case, there must be a showing that the injury is work related and not the result of the normal degenerative aging process.  
Nunn v. Industrial Comm'n
, 157 Ill. App. 3d 470, 510 N.E.2d 502 (1987).

It is the province of the Commission to weigh and resolve conflicts in the evidence and to choose among conflicting inferences therefrom.  
Dexheimer v. Industrial Comm'n
, 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037 (1st Dist 1990).  Only when the decision of the Commission is without substantial foundation in the evidence or its findings are against the manifest weight of the evidence should the Commission's decision be set aside.  202 Ill. App. 3d at 443, 559 N.E.2d at 1037.  While we are reluctant to set aside a Commission's decision on a factual question, we must not hesitate to do so when the clearly evident, plain and indisputable weight of the evidence compels an apparent, opposite conclusion.  
Montgomery Elevator Co. v. Industrial Comm'n
, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 825 (3d Dist. 1993).  An opposite conclusion is apparent in this instance, and accordingly, we must reverse the decision of the Commission.

Under the Act, compensation may be awarded for a claimant's condition of ill-

being even though the conditions of his or her employment do not constitute the sole, or even the principal, cause of injury.  
Lasley Construction Co. v. Industrial Comm'n
, 274 Ill. App. 3d 890, 893, 655 N.E.2d 5, 8 (5th Dist. 1995); 
Teska v. Industrial Comm'n
, 266 Ill. App. 3d 740, 742, 640 N.E.2d 1, 3 (1st Dist. 1994).  In order to constitute an accidental injury within the meaning of the Act, the claimant need only show that some act or phase of the employment was a causative factor of the resulting injury.  
Teska
, 266 Ill. App. 3d at 742, 640 N.E.2d at 3; 
Mendota Township High School v. Industrial Comm'n
, 243 Ill. App. 3d 834, 837, 612 N.E.2d 77, 79 (4th Dist. 1993).  Additionally, an injury is considered accidental even though it develops gradually over a period of time as a result of a repetitive trauma, without requiring complete dysfunction, if it is caused by the performance of claimant's job.  
Cassens Transport Co. v. Industrial Comm'n
, 262 Ill. App. 3d 324, 330, 633 N.E.2d 1344, 1348 (2d Dist. 1994).  A nonemployment related factor which is a contributing cause with the compensable injury in an ensuing injury does not break the causal connection between the employment and claimant's condition of ill-being.  
Teska
, 266 Ill. App. 3d at 742, 640 N.E.2d at 3.  See also 
International Vermiculite Co. v. Industrial Comm'n
, 77 Ill. 2d 1, 4, 394 N.E.2d 1166, 1167 (1979).  The fact that other incidents, whether work related or not, may have aggravated claimant's condition is irrelevant.  
Lasley Construction
, 274 Ill. App. 3d at 893, 655 N.E.2d at 8.

At the time of the accident, claimant had worked for employer over 20 years as a truck driver.  Claimant spent some 30 to 35 hours of each work week driving, and the majority of his driving was done locally.  Claimant testified he used his right hand continuously to shift, help steer the truck and operate various ancillary hydraulic equipment on the vehicle.  He also testified his symptoms worsened in proportion to the amount of time spent operating the truck.  He had had no prior injuries to his right arm or hand, but by the fall of 1992, claimant testified his right hand often would go completely numb while driving.  At night his hand would become so painful or numb that he could not sleep.  His treating doctor noted in claimant's treatment reports that claimant's' carpal tunnel syndrome was directly related to work.  Dr. Carroll, the renowned hand specialist who examined claimant, restated this conclusion without comment or contradiction.  It would therefore appear, as the arbitrator concluded, that claimant's condition of ill-being was causally connected to his employment.  The Commission, however, found fault with the fact that causation was not directly established by any of the medical evidence.  Ignoring the treating doctor's notes, there is no requirement that there be any doctor's testimony to establish causation when the record contains medical evidence consistent with claimant's testimony and the findings of the treating doctor.  See 
Gubser v. Industrial Comm'n
, 42 Ill. 2d 559, 564, 248 N.E.2d 75, 78 (1969).

In denying claimant benefits, the Commission also pointed to the fact that claimant did remodeling work on his home.  The evidence as to how much time, when and what exactly claimant did during these projects is scanty at best.  Even if these tasks combined with claimant's job duties resulted in his present condition of ill-being, claimant is still entitled to compensation.  Again, claimant must only prove that some act or phase of his employment was 
a
 causative factor, not the sole cause of injury.  Clearly claimant met his burden.  The quantitative proof improperly demanded by the Commission as to the repetitive nature of claimant's employment was more than the Commission required of the evidence it relied upon to conclude claimant's symptoms arose from his home remodeling activities.  See 
Darling v. Industrial Comm'n
, 176 Ill. App. 3d 186, 194-95, 530 N.E.2d 1135, 1141-42 (1st Dist. 1988).  The record before us simply does not support the Commission's conclusion.  We therefore conclude the decision of the Commission is against the manifest weight of the evidence.

For the aforementioned reasons, we reverse the decision of the Commission, as confirmed by the circuit court, and further reinstate the decision of the arbitrator.

REVERSED.

RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

I disagree with the majority's decision which reversed the trial court's order confirming the Commission's decision.

This case is not about whether claimant had carpel tunnel syndrome.  All of the doctors agree that claimant did have carpal tunnel.  What this case is about is whether the Commission's decision finding "that he failed to prove this current condition of ill-being is causally related *** arising out of and in the course of the Petitioner's employment."

The majority cites 
Dexheimer
 in support of overturning the Commission's decision.  
Dexheimer
 makes it clear that "a reviewing court will not discard the findings of the Commission, even though it might have decided differently on the same facts, unless such findings are contrary to the manifest weight of the evidence."  202 Ill. App. 3d 437, 443, 559 N.E.2d 1034, 1037.

The majority relies on an entry of Dr. Augustin, September 25, 1992, "This is related directly under Workmen's Comp."  There is nothing in that entry concerning an examination and claimant was simply referred to an "Ortho-MD."  As pointed out by the majority, the entry above these statements is "Still wants to argue that his rt. inguinal hernia exacerbation, was 
mainly
 caused by his work."

The majority also states that Dr. Carroll did not challenge Dr. Augustin's comments that claimant's carpal tunnel syndrome was related to his occupation.  I respectfully suggest that this statement by the majority is incorrect for two reasons.  First, Dr. Augustin did not examine claimant as to any carpal tunnel syndrome and second, Dr. Carroll's report does not make any reference to Dr. Augustin.

With respect to the medical reports, Dr. Loughran, by entry of September 20, 1993, states: "Patient was just examined by me 9/28/93 and gave a history of carpal tunnel syndrome for the past few mo.  He gave no specific date of injury, nor stated any work related accident at that time.  Nothing was documented at that time as to any injury." 

A prior entry of June 12, 1993, states: "Here for evaluation of carpal tunnel.  Needs professional opinion as to whether condition is work related or not."

In reviewing the report of Dr. Carroll, he stated in his report in part: 

"The patient has undergone appropriate care for right carpal tunnel syndrome.  He has reached maximum medical improvement.  Treatment has been appropriate.  He has some mild residual subjective symptoms and minimal evidence of continued median nerve irritation on examination.  He has reached maximum medical improvement.  There is evidence of industrial impairment.  He has been released to full duty and should remain working at a normal level.  On a note in the chart it was determined that this was directly related to his occupation.  No follow up was coordinated.  His diagnosis is right carpal tunnel syndrome and his prognosis is good." 

In the report of Dr. Shermer with respect to the history given as to the claimant:

"The patient is fifty-nine years old.  

The patient states that he works as a driver and states that he has a problem with the right wrist and hand which have been going numb with considerable pain involving the wrist, going up the arm to the shoulder.  The patient states that this problem has been present for approximately eight months, but in the past couple of months the symptoms have become progressively worse.  The patient states that the problem has awakened him at night.  He did see a Union Health Clinic and the patient was referred for electromyogram.  The patient states that he was told that he had a carpal tunnel syndrome and required surgery."  

The date of this report is October 15, 1992.  Dr. Shermer's report shows no other history and nothing with respect to the job duties of the claimant.  

With respect to a right wrist hand examination, Shermer stated:

"The right wrist contours are normal.  There is no thickening present.

The patient is able to flex the right wrist to 80°.  Pronation, supination, radial and ulnar deviation are intact.

Thenar and hypothenar muscles are intact.  The skin is well callused for both hands.  The patient does have a significant positive Tinel sign.  The Phalen sign is questionably positive. 

The patient does have intact sensation for all digits.  He does note a variable diminished sensation to pinwheel and touch over the palmar aspect of the hand, involving primarily the thumb, index and long fingers.

The grasp strength, however, is quite good for the right hand, with the fingers closing completely into the palm and resisting opening.  Finger abductor and adductor strength remains intact and thumb pinch is excellent.

The wrist circumference measures 7" on the left and 7" on the right.

The left wrist shows the same excursion levels.  Grasp strength is excellent for the left hand.  The Tinel and Phalen signs are negative."

It is significant to note that in Dr. Shermer's summation as to disability he states as follows:

"The relationship to his work duties is not clear, although the theory of cumulative and repetitive stress, over a period of time, has been used to link these conditions and trauma at work."

The Commission's findings with respect to the medical records of Shermer, Loughran, and Carroll are correct.  These findings make it clear that the Commission's decision is not against the manifest weight of the evidence.  Repetitive trauma is uniquely an area of expertise for the Commission.

I also disagree with the majority's reliance on 
Darling
 as a rationale to reverse the Commission.  In 
Darling
, there was a substantial amount of evidence as to claimant's work activities, "the medical reports contain a myriad of statements clearly depicting the repetitive nature and frequency of the movements."  
Darling
, 176 Ill. App. 3d 186, 195, 530 N.E.2d 1134, 1142.  Here, the statements comparing the proof as to claimant's employment and home improvement activities is not a basis for finding the Commission's decision is against the manifest weight of the evidence.

Everyone, the Commission, the circuit court, and this court, agrees this claimant had carpal tunnel syndrome.  However, it is clear that the record supports a finding of no causal connection between the injury and claimant's work.