ANDERSON CLAYTON FOODS, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Karen Allen, Appellant).

Fourth District (Industrial Commission Division)   No. 4—87—0306WC

Opinion filed May 5, 1988.—Modified on denial of rehearing July 26, 1988.

James N. Keefe, of Quincy, for appellant.

L. Robert Mueller, of Livingstone, Mueller, Gunning, O'Brien & Davlin, P.C., of Springfield, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Karen Allen, filed three workers' compensation claims for injuries allegedly occurring on September 20, 1982, February 17, 1983, and December 22, 1983, while she was working for the respondent, Anderson Clayton Foods. The arbitrator held a consolidated hearing on the three claims. Only the latter two are before us on appeal. We will therefore limit our discussion of the facts, as much as possible, to the latter claimed injuries.

Following the hearing, the arbitrator found that the petitioner had sustained a work-related injury on February 17, 1983, but that there was no causal connection between the accident and the petitioner's current condition of ill-being. The arbitrator further found that the December 22, 1983, occurrence did not constitute an accident.

On review, the Industrial Commission found that there was a causal connection between the February 17 accident and the petitioner's current condition of ill-being. The Commission further found that an accident had occurred on December 22, 1983. In making the latter finding, the Commission relied on *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1985), 138 Ill. App. 3d 880, 487 N.E.2d 356, *aff'd* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.

The circuit court reversed the Commission and reinstated the arbitrator's decision. The petitioner appeals, arguing that the Commission's decisions were not against the manifest weight of the evidence and that the circuit court therefore erred in overturning them.

The burden is on the claimant to prove that her injury was causally related to her employment. (*Newgard v. Industrial Comm'n* (1974), 58 Ill. 2d 164, 317 N.E.2d 524.) However, aggravation or acceleration of a preexisting disease is an injury which is compensable under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), if caused by some accident occurring in the course of employment. (*Riteway Plumbing v. Industrial Comm'n* (1977), 67 Ill. 2d 404, 367 N.E.2d 1294.) Further, an employee may be "accidentally injured" under the Act as a result of repetitive, work-related trauma even absent a final, identifiable episode of collapse. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) In repetitive trauma cases, the employee must show that the injury is work-related and not the result of a normal degenerative aging process. *Peoria County Belwood Nursing Home,* 115 Ill. 2d 524, 505 N.E.2d 1026.

In determining whether the claimant has met her burden of proof, the Industrial Commission is not bound by the arbitrator's findings and may properly determine the credibility of the witnesses, weigh their testimony and assess the weight to be given to the evidence. (*Rambert v. Industrial Comm'n* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364.) A reviewing court may overturn the Commission's factual determinations only when they are against the manifest weight of the evidence. *Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 459 N.E.2d 963.

In the instant case, the petitioner testified before the arbitrator that on September 20, 1982, she was working on the respondent's

salad oil line when she felt pain in her back and neck. She reported the pain to the respondent and was subsequently off work for several weeks, during which she received treatment. Even after she returned to work, her neck hurt and she had headaches when she worked long hours.

On February 17, 1983, the petitioner fell from a broken pallet at work. Her neck immediately hurt and she reported the incident to the respondent. She was off work until June 26, 1983, during which time she received physical therapy and took medicine. She continued having neck and back pain even after returning to work.

On December 22, 1983, the petitioner was working as a "scrambler." This involved dragging pallets loaded with boxes of empty bottles to the production line, throwing the boxes of empty bottles to another worker, and stacking the unloaded pallets. Every half hour, the petitioner would switch with her work partner and would then be in charge of placing the empty bottles onto a waist-high conveyor belt and the empty boxes onto a shoulder-high conveyor belt. During this time, she kept her head turned to the right to watch for any bottles which might fall.

As the December 22 workday progressed, the petitioner experienced pain and swelling in her arm. At the hearing before the arbitrator, she could not remember whether she told anyone at work about the pain.

On December 27, 1983, following a four-day weekend, the petitioner started working at 6:45 a.m. By 8 a.m. her neck and right arm were hurting so much that she was dropping things. She told her foreman, Pat Mast, about the pain and swelling. Mast said she would get someone to replace the petitioner. A replacement arrived at 1 p.m. By then, the petitioner had a headache and could barely return her head to a foreward position from a right-facing position.

The petitioner subsequently began taking medicine and undergoing therapy for her neck problems. In April of 1984, her physician released her to return to light-duty work. However, the respondent's personnel director said they had no work available within her restrictions. The petitioner currently cannot turn her neck to the left or right for over five minutes without experiencing pain and headaches. She also cannot look down for an extended period. She visits her physician every two months. The petitioner has not worked since December 27, 1983.

On cross-examination, the petitioner admitted that in a car accident approximately 20 years earlier, she had fractured her skull, bruised her brain and suffered a memory loss.

The petitioner introduced into evidence before the arbitrator the deposition of family physician John A. Peterson. Dr. Peterson testified that he was the respondent's company physician and had been the petitioner's primary physician for her work-related medical complaints. When he saw the petitioner in October of 1982, she told him she had been pushing a case of salad oil and felt something pop in her neck. The next day, her neck was stiff. Dr. Peterson diagnosed a cervical sprain and prescribed physical therapy. On November 23, 1982, the petitioner returned to light duty work. At that time, she complained only of a slight discomfort in her neck.

Dr. Peterson next saw the petitioner on February 21, following her February 17, 1983, work accident. The accident had happened on a Thursday. She worked Friday, then had off Saturday and Sunday. By Monday morning, her neck was stiff and as she worked the pain and stiffness worsened. Dr. Peterson found no objective indications of injury, but based on his examination and the petitioner's subjective complaints, diagnosed that she suffered from cervical strain. He sent her to see neurosurgeon Michael McIlhany, who X-rayed her back. Finding evidence of a muscle spasm and a small amount of ligamentous instability, Dr. McIlhany concurred with Dr. Peterson's diagnosis.

The petitioner returned to work in July of 1983. She thereafter reported that though she was sore after working, she did not suffer the previous pain. Further, she now had a full range of motion in her neck and no longer suffered muscle spasms or arm pain.

On December 27, 1983, Dr. Peterson again saw the petitioner. She reported that she had awakened on December 23 with pain and swelling in her right arm from the elbow down. She could not recall any specific trauma or event initiating the condition. Dr. Peterson examined her and concluded that she had had a recurrence of her cervical strain. He then instructed her not to work and started her on physical therapy and a TNS unit to decrease the pain from muscle spasms. Dr. Peterson also referred the petitioner to physiatrist Edward A. Trudeau, who tested her for nerve damage. Dr. Trudeau found no such damage. He concurred with Dr. Peterson that she was suffering from chronic cervical muscle strain.

By May of 1984, Dr. Peterson found little change in the petitioner's condition and thought it would be best to return her to light duty work. He next saw her in January of 1985. Her condition was significantly worse. Dr. Peterson speculated that the petitioner's failing to exercise her neck could have caused the worsened condition. Her condition was unchanged as of March 26, 1985.

Dr. Peterson testified that he believed the petitioner was disabled

every time he saw her. He noted, however, that he could not comment on the eight-month period in 1984 when he did not see her. Finally, he opined that while the petitioner can now lift 5 to 10 pounds, she cannot presently return to any type of work.

Drs. Peterson, McIlhany and Trudeau testified that even though they could find no objective evidence of injury, they did not believe the petitioner was malingering. Further, Dr. Peterson noted that chronic cervical muscle strain is characterized by a lack of objective evidence.

Dr. Peterson specifically stated that he believed the February 17, 1983, accident had aggravated the petitioner's neck problems and that there was a causal relationship between her work as a scrambler and her present condition. He later explained, however, that the repetitive nature of the petitioner's work did not cause her problems. Only the specific injuries were responsible for aggravating her neck condition.

Pat Mast, the petitioner's foreman, testified that on December 27, 1983, the petitioner said her neck was bothering her. Mast asked the petitioner if she had had an accident and the petitioner replied that she did not know what had caused the pain. Mast could not remember the petitioner's complaining of pain on December 22, 1983.

JoAnn Lewis, the respondent's personnel secretary, testified that on December 27, 1983, the petitioner reported that her neck was hurting. Lewis further stated that the petitioner said she did not remember what had caused her neck to start hurting.

The respondent introduced Dr. McIlhany's deposition as evidence before the arbitrator. In the deposition, Dr. McIlhany essentially reiterated the information provided by Dr. Peterson, adding that he had seen the petitioner on October 24, 1983. At that time, she reported that she had recently fallen. Dr. McIlhany found that her condition was the same as it had been when he examined her on August 12, 1983.

Physician Otakar Machek examined the petitioner on June 28, 1983, at the respondent's request. He opined that the physical therapy notes concerning the petitioner showed that her condition had improved 80% and was static. He also thought she might have a preexisting condition due to the car accident and that it was the cause of her headaches. Finally, he opined that she could return to work without restrictions.

The Commission found that the petitioner had suffered a work-related injury on February 17, 1983. It further found that a causal relationship existed between the petitioner's February 17 injury and her present condition of ill-being. In so finding, the Commission ruled that

the October 24, 1983, fall was not an intervening accident. The Commission awarded the petitioner 18⁵/₇ weeks of temporary total disability compensation for the period she was off work from February 17, 1983, through June 26, 1983.

Regarding the alleged December 22, 1983, injury, the Commission found that the petitioner had sustained accidental injuries arising out of and in the course of her employment on that day. As revealed by its reference to *Belwood*, the Commission apparently relied on a repetitive trauma theory in reaching its conclusion. Further, the Commission found that a causal relationship existed between the December 22, 1983, injury and the petitioner's present condition of ill-being. Accordingly the Commission awarded the petitioner temporary total disability for 108³/₇ weeks, from December 27, 1983, through January 24, 1986, the date of the hearing on review.

■ Having examined the evidence in light of the relevant case law, we find that the Commission's determination that the February 17, 1983, accident was causally related to the petitioner's current condition of ill-being was not against the manifest weight of the evidence. In so finding, we note that Dr. Peterson testified that the February 17 accident aggravated the petitioner's neck problems. Accordingly, even if, as the respondent suggests, the petitioner had preexisting neck problems from her car accident, the Commission could properly have found that the work-related aggravation of that problem entitled her to compensation. (*Riteway Plumbing v. Industrial Comm'n* (1977), 67 Ill. 2d 404, 367 N.E.2d 1294.) We therefore reverse that part of the circuit court's decision and reinstate the corresponding part of the Commission's decision.

■ Regarding the alleged accident of December 22, 1983, we note that there is no evidence of a specific accident upon which to base an award. As for recovery under a repetitive trauma theory, Dr. Peterson offered the only evidence on this issue. He stated that the repetitive nature of the petitioner's work would not have injured her. Accordingly, we find that the Commission's determination that a work-related injury occurred on December 22, 1983, was against the manifest weight of the evidence. We therefore affirm that portion of the circuit court's decision reinstating the arbitrator's finding on that point.

■ We note that our decision leaves at issue the amount of TTD to which the petitioner is entitled. The Commission's decisions on the February 17 and December 22 injury claims were entered as separate orders. Accordingly, our decision has the effect of reinstating the Commission's finding that a causal relationship existed between the

February 17 injury and the petitioner's current condition of ill-being, but awarding her no TTD for her time lost from work after December 22, 1983. While the petitioner requested in a petition for rehearing that we resolve this issue, we find that the Commission is in a better position to determine the proper award of TTD for the February 17 injury.

The judgment of the circuit court of Morgan County is affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with our findings.

Affirmed in part; reversed in part.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.