THREE "D" DISCOUNT STORE, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Jerry M. Myers, Appellee).

Fourth District (Industrial Commission Division)   No. 4—88—0142WC

Opinion filed February 23, 1989.—Modified on denial of rehearing
June 25, 1990.

McCULLOUGH, J., specially concurring.

Robert A. Hoffman, of Ryan, Cini & Bennett, of Mattoon, for appellant.

Richard K. Johnson, of Katz, Friedman, Schur & Eagle, of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Jerry M. Myers, brought a claim pursuant to section 19(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). The arbitrator found for the respondent, Three "D" Discount Store. The Industrial Commission reversed, awarding the petitioner temporary total disability for a period of 39$4/7$ weeks and $5,812.95 in medical expenses. The circuit court of Coles County confirmed. The respondent appeals.

The record shows that the 46-year-old petitioner was employed by the respondent from August 7, 1983, to August 10, 1984. For the first

two weeks, the petitioner worked on the renovation of the respondent's store. The petitioner was then hired full time as a "buffer man." In his job, the petitioner used two types of buffing machines. The first machine, used primarily from August through October of 1983, was an electric buffer weighing approximately 75 pounds. The second machine was a Honda propane buffer weighing between 150 and 200 pounds. Between August and October of 1983, the petitioner used both machines in scrubbing, waxing and buffing the floors. He worked from six to eight hours a day and experienced no physical problems.

After October of 1983, the petitioner's hours were reduced to between 2 and 2½ hours a day, six days a week. The petitioner mainly dry-buffed the floors, using the propane buffer almost exclusively. He reserved the electric buffer for periodic shampooing of the store's carpeted areas.

In January of 1984, the petitioner noticed swelling in both hands and began having shooting pains in his right arm and hand. He noticed this condition at home and at work. He consulted his family physician, Dr. Carl Johnson, who prescribed Rufen for the pain. At the time, the petitioner was moderately overweight and was being treated by Dr. Johnson for a diabetic condition. He remained on the medication through February, as the pain in his hands and upper right arm continued to increase in severity. In March, the petitioner began noticing a tingling sensation in his hands and more pain shooting up his right arm. By April, he noticed numbness in the ring finger and small finger of his left hand and in the area of his left wrist. He also noticed numbness from the middle finger of his right hand through his wrist and up his right arm. While working in May and June of 1984, petitioner noticed that his condition continued to grow more severe. He continued on medication, and Dr. Johnson referred him to Dr. Block, a neurologist.

On June 27, 1984, Dr. Block took an EMG and sent the results to Dr. Johnson. Dr. Block's report stated that his examination suggested bilateral carpal tunnel syndrome, somewhat worse in the right hand than in the left hand. Dr. Johnson discussed the results of the EMG with petitioner and then referred him to Dr. James McKechnie, an orthopedic surgeon. Throughout this period, the petitioner continued buffing the store's floor according to the schedule set up by the respondent.

Dr. McKechnie examined the petitioner on July 10, 1984. During his interview with Dr. McKechnie, petitioner did not state that his condition was work related or that Dr. Johnson had so informed him. Petitioner stated only that he had had the symptoms for about four months

prior to his visit with McKechnie. Dr. McKechnie ordered X rays and scheduled petitioner for surgery in August.

Sometime around the end of July or the beginning of August of 1984, petitioner notified respondent's manager, Tom Underwood, that he suffered from carpal tunnel syndrome. The petitioner told Underwood that his condition would require surgery and that it was his physician's opinion that the condition was work related. The petitioner also testified that on August 10, 1984, the last day he worked, he noticed swelling and severe pain in both hands. He experienced severe numbness in the small finger and ring finger of his left hand and in the index and middle fingers of his right hand. He also noted pain and numbness in his right wrist and up his right arm.

The petitioner was hospitalized for an unrelated condition on August 14, 1984. It was during this hospitalization that the carpal tunnel surgery was performed on the petitioner's right hand and wrist on August 22, 1984. On August 23, 1984, the petitioner called Ron White, the respondent's assistant manager, and informed him of the surgery and of Dr. McKechnie's belief that the injury was work related. A second carpal tunnel surgery was performed on the petitioner's left wrist on November 1, 1984.

Between November of 1984 and February of 1985, the petitioner experienced pain and numbness in the small and ring fingers of his right hand and from the wrist to the elbow. Dr. McKechnie diagnosed that the petitioner was suffering from ulnar nerve palsy and performed surgery on February 14, 1985, to relieve the condition.

The only medical evidence presented to the arbitrator was the deposition of Dr. McKechnie. Though Dr. McKechnie agreed that carpal tunnel syndrome and ulnar nerve palsy can be due to a number of causes, including weight gain, fluid retention, trauma and diabetes mellitus, it was his opinion that the petitioner's condition was due to repeated trauma in using the buffing machine.

On June 16, 1985, less than four months before this court filed its opinion in *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1985), 138 Ill. App. 3d 880, 487 N.E.2d 356, the arbitrator entered her finding for the respondent. Without the benefit of that precedent, the arbitrator in this case found that the petitioner had failed to offer any evidence of when an accidental injury occurred, had failed to show causation and had failed to give timely notice. The arbitrator found that if there was a work-related injury, it most likely occurred in January of 1984 and not on August 10, 1984.

The Industrial Commission (Commission) received no new evidence, but after reviewing the record, on June 8, 1987, reversed the

arbitrator's findings. Relying on *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026, the Commission found that the petitioner had sustained accidental injuries on August 10, 1984, the last day of work, resulting from repetitive trauma arising out of and in the course of his employment. The Commission further found that on "approximately" August 10 the petitioner's injury had clearly manifested itself.

In addition, the Commission found that a causal relationship existed between the work trauma and the injury, based on Dr. McKechnie's opinion that the repeated trauma associated with the petitioner's repetitive flexing of his elbows at 90° and his gripping and manipulating the buffing machines either were the source of or aggravated a preexisting condition of carpal tunnel syndrome and ulnar nerve palsy. The Commission noted that the respondent had presented no evidence to rebut this testimony.

The Commission further found that notice was timely given. Finally, the Commission ruled that the petitioner was temporarily totally disabled for a period of 394/7 weeks and was entitled to $5,812.95 for reasonable and necessary medical expenses.

The respondent appealed to the circuit court, which confirmed the Commission's decision. On appeal to this court, the respondent first argues that the Commission erred in finding that the petitioner had sustained accidental injuries on August 10, 1984.

■■■ An employee seeking benefits for gradual injury due to repetitive trauma must meet the same standard of proof as a petitioner alleging a single, definable accident. (*Nunn v. Industrial Comm'n* (1987), 157 Ill. App. 3d 470, 510 N.E.2d 502.) The petitioner must prove a precise, identifiable date when the accidental injury manifested itself. "Manifested itself" means the date on which both the fact of the injury and the causal relationship of the injury to the petitioner's employment would have become plainly apparent to a reasonable person. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) The test of when an injury manifests itself is an objective one, determined from the facts and circumstances of each case. (*Luttrell v. Industrial Comm'n* (1987), 154 Ill. App. 3d 943, 507 N.E.2d 533.) A reviewing court may overturn the Commission's factual determinations only when they are against the manifest weight of the evidence. *Anderson Clayton Foods v. Industrial Comm'n* (1988), 171 Ill. App. 3d 457, 526 N.E.2d 844.

Having once reversed the Commission's determination, we have reconsidered our position upon petition for rehearing; and we now find in petitioner's favor. The evidence in this case establishes that Dr. Carl

Johnson discussed Dr. Block's report of the EMG results with petitioner. The report was dated June 27, 1984; and it was in May and June that petitioner's condition had deteriorated to the point that his family doctor referred him to a medical specialist. No direct evidence was presented regarding whether Dr. Johnson ever told the petitioner that his injury was work related. It is clear that the condition was at least tentatively diagnosed as carpal tunnel syndrome on June 27, and that petitioner learned that the condition was work related prior to petitioner's conversation with Tom Underwood in late July or early August 1984. It is not clear, however, that the tentative diagnosis and its relationship to petitioner's employment were discussed at any time prior to or during petitioner's visit to Dr. Johnson following Dr. Block's examination. It was not until July 10, when petitioner met with Dr. McKechnie, that it became clear that petitioner's condition necessitated surgery. The following deposition testimony relative to when petitioner learned that his condition was work related was elicited from Dr. McKechnie during respondent's cross-examination:

"Q. Doctor, are we to understand *** that when you saw Mr. Myers on July 10, 1984 he advised you that the symptoms of which he complained had been going on for approximately four months prior to that date?

A. That's right.

Q. Did he advise you at that time that Dr. Johnson had told him that the symptoms which he complained of might or could have been work related?

A. That was not discussed at the time of his visit.

Q. At any time since the July 10, 1984 visit has Mr. Myers advised you that Dr. Johnson, prior to July 10, 1984, advised him that his symptomatology might be work related?

A. No."

■ Based on the evidence of record, it could be reasonably inferred that petitioner first learned that his condition of ill-being was work related at some point between July 10 and the first of August 1984. Applying the reasonable person test to these facts, we find that although petitioner persisted in his employment until August 10, a reasonable person in these circumstances would have been on notice that his condition was both work related and medically disabling on July 10, 1984.

■ This court recently stated in *Oscar Mayer & Co. v. Industrial Comm'n* (1988), 176 Ill. App. 3d 607, 531 N.E.2d 174, 177, that we reject any interpretation of *Peoria Belwood* which would permit the employee to always establish the date of the accident in a repetitive

trauma case by reference to the last day of work. We also there stated that "we reject [the] contention [that] the date of discovery of the condition and its relation to the employment necessarily fixes the date of accident." (*Oscar Mayer*, 176 Ill. App. 3d at 612.) An employee who continues to work on a regular basis despite his own progressive ill-being should not be punished merely for trying to perform his duties without complaint. On the other hand, it is not this State's policy to encourage disabled workers to silently push themselves to the point of medical collapse before giving the employer notice of an injury. Although our finding that the injury in this case "manifested itself" on July 10, rather than August 10, does not affect the Commission's ruling in petitioner's favor, we emphasize that the peculiar facts of each case must be closely analyzed in repetitive-trauma cases to be fair to the faithful employee and his employer as well as to the employer's compensation insurance carrier.

Respondent next contends that petitioner failed to prove that his condition of ill-being was causally related to an accident arising out of and in the course of his employment.

■ In repetitive trauma cases, the employee must show that the injury is work related and not the result of a normal degenerative aging process. (*Peoria Belwood*, 115 Ill. 2d at 530, 505 N.E.2d at 1028.) Petitioner need only prove that some act or phase of employment was a causative factor of the resulting injury. (*County of Cook v. Industrial Comm'n* (1977), 69 Ill. 2d 10, 370 N.E.2d 520.) The question of causation is one of fact for the Industrial Commission and will not be overturned unless the finding is against the manifest weight of the evidence. *Interlake, Inc. v. Industrial Comm'n* (1987), 161 Ill. App. 3d 704, 515 N.E.2d 202.

■ In this case, petitioner testified that he used the propane buffer in a side-to-side motion. Dr. McKechnie stated that the use of the hands in controlling and manipulating a floor polisher "would contribute to the development of the carpal tunnel and ulnar nerve symptoms in either aggravating a preexisting condition or being the source of the condition itself." Respondent offered no evidence to rebut either petitioner's testimony or Dr. McKechnie's expert opinion of causation. Based on her visit to respondent's place of business, the arbitrator found noticeable vibration in operating each of the buffing machines used by petitioner in his employment. However, she also stated that she did not notice any torque and that "sideward motion on [the propane buffer] *** is not easy if not next to impossible." We do not interpret the latter finding to be the arbitrator's comment on petitioner's credibility, but rather a comment on the physical exertion required to

perform petitioner's job. However, even if we accepted this finding as a contradiction to petitioner's recitation of his job duties, we find that the manifest weight of the evidence favors a finding for petitioner. (See *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, 531 N.E.2d 379.) Accordingly, we affirm the Commission's decision with regard to causation.

■ Lastly, respondent argues that petitioner failed to give timely notice of his injury. Section 6(c) of the Workers' Compensation Act provides in pertinent part:

"Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. \* \* \*

\* \* \*

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy." Ill. Rev. Stat. 1983, ch. 48, par. 138.6(c).

■ Having found that petitioner's injury manifested itself on July 10, we find that he had until August 24, 1984, to give timely notice to his employer. The evidence establishes that petitioner gave notice on two occasions—the first time at the end of July or first of August, and the second on August 23, 1984. Both notices fell within the statutory period.

We affirm the decision of the circuit court confirming the Commission's decision awarding benefits to the petitioner.

Affirmed.

WOODWARD and LEWIS, JJ., concur.

JUSTICE McCULLOUGH, specially concurring:

I disagree with the majority in altering the date found by the Commission to be the date of injury from August 10, 1984, to July 10, 1984. It is clear that in *Oscar Mayer Co. v. Industrial Comm'n* (1988), 176 Ill. App. 3d 607, 531 N.E.2d 174, the last day of work is at least a factor which may be considered to determine the date of accident in a repetitive trauma case. The Commission considered the last day of work in determining the date of injury. The date fixed by the Industrial Commission, August 10, 1984, was not against the manifest weight of the evidence.

McNAMARA, J., concurs.