DEANA DURAND, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (RLI Insurance Company, Appellee).

Third District (Workers' Compensation Commission Division)
No. 3—04—0514WC

Opinion filed June 8, 2005.—Rehearing denied July 20, 2005.

HOLDRIDGE, J., dissenting, joined by DONOVAN, J.

Donovan W. Gaede and Christopher R. Doscotch, both of Janssen Law Center, of Peoria, for appellant.

John A. Maciorowski, of Rusin, Patton, Maciorowski & Friedman, Ltd., of Chicago, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Deana Durand, appeals from an order of the circuit court of Peoria County confirming a decision of the Industrial Commission (Commission)[1] which denied her benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)) on the grounds that her application for adjustment of claim was filed outside of the applicable limitations period. For the reasons that follow, we affirm.

On January 12, 2001, the claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits for repetitive

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

trauma injuries to her wrists and upper extremities arising out of and in the course of her employment with RLI Insurance Company (RLI). In that application, the claimant alleged that September 8, 2000, was the date of her injury. An arbitration hearing was held on May 9, 2002, during which the following facts were established by the testimony presented and exhibits admitted into evidence.

Prior to the arbitration hearing, the claimant had been employed by RLI for approximately 11 years; the last 7 years of which she worked as a policy administrator. As a policy administrator, the claimant spent 1½ hours of her workday scanning insurance policies and loading them into her computer. The remaining six hours of her work day were spent entering data into documents using a computer keyboard. According to the claimant, she began experiencing pain in her wrists and fingers "at least three years" prior to the arbitration hearing.

On August 15, 2000, the claimant visited Dr. Lestel Escorcia complaining of pain in her wrists and hands radiating up to her elbows, along with tingling and numbness in her fingers. She reported that she experienced pain "on and off" for approximately 1½ years. The claimant told Dr. Escorcia that she had been operating a keyboard for approximately seven to eight years. Dr. Escorcia diagnosed the claimant's condition as bilateral hand and wrist pain that was "probably" carpal tunnel syndrome. He prescribed wrist splints and Relafen, and referred the claimant to Dr. Gregory Blume for an EMG.

The claimant saw Dr. Blume on September 8, 2000, and gave a history of bilateral wrist and right elbow pain for two years. On that date, the claimant underwent an EMG/NCV study which revealed mild carpal tunnel syndrome in her right wrist. Dr. Blume opined that the claimant's symptoms were work-related.

At RLI's request, the claimant was examined by Dr. Jay Pomerance on November 6, 2000. During that visit, the claimant stated that she had been experiencing symptoms of carpal tunnel syndrome for the prior 18 months. Dr. Pomerance testified that low force repetitive activities do not cause carpal tunnel syndrome and opined that typing, as well as many manual assembly activities, could be eliminated as causative factors.

On November 29, 2000, the claimant was examined by Dr. David Conner. Dr. Conner recorded a history of the claimant having been engaged in continuous computer entry work during eight-hour shifts and having developed "problems" with both arms six or seven months earlier. He diagnosed the claimant with bilateral carpal tunnel syndrome, secondary to her work activity. On February 12, 2001, the claimant underwent an endoscopic decompression of the right median nerve performed by Dr. Conner.

On August 7, 2001, the claimant was examined by Dr. Robert Martin at the request of her attorney. Dr. Martin opined that the claimant's work activities were a causative factor in her development of carpal tunnel syndrome, even if she performed keyboard entry work as little as four hours per day. He fixed the manifestation of carpal tunnel syndrome as the date that a person first complains about numbness, tingling, pain or any combination thereof. According to Dr. Martin, once the symptoms of carpal tunnel syndrome manifest themselves, an individual would remain symptomatic if she continued to perform the same duties. He also testified that, if the claimant experienced symptoms in 1997 which she considered to be work-related, then the symptoms could have been a manifestation of carpal tunnel syndrome.

The claimant underwent an endoscopic decompression of the left median nerve on June 4, 2001.

During the course of her testimony at the arbitration hearing, the claimant admitted having a conversation on January 29, 1998, during which she stated that the symptoms in both of her hands started in September or October of 1997 and that she told her supervisor at that time that she believed her condition was work-related. Certain relevant portions of the claimant's testimony are as follows:

"Q. When you gave your statement on January 29th of 1998 you indicated you were having problems with your wrists and you felt that it was work-related correct?

A. Right.

\* \* \*

Q. And that opinion that you gave, was that your opinion, was that an opinion that had been given to you by your doctor? How did you reach that opinion?

A. It was my opinion, because of the pains I was having.

\* \* \*

Q. Back in 1997 you told your supervisor that in your mind you were convinced that your condition was work-related; is that correct?

A. Yes.

\* \* \*

Q. Back in 1997 had any doctor diagnosed you with a condition known as carpel tunnel syndrome?

A. No.

\* \* \*

Q. Did you think you had carpal tunnel then from what you knew?

A. I wasn't sure because it wasn't real constant and real severe at the time.

Q. You had heard of carpal tunnel syndrome, though; is that correct?

A. I think I might have heard of it.

Q. And you knew people who had it or had had it?

A. Yes.

Q. And it was your belief that you had that condition and you felt that it was due to your job duties; is that correct?

A. Yes."

The claimant testified that she has no hobbies involving intensive hand use and does not use a computer at home.

Following the hearing, the arbitrator found that the claimant sustained a repetitive trauma injury that arose out of and in the course of her duties with RLI. The arbitrator also found that, although the claimant had experienced symptoms of carpal tunnel syndrome well before September 8, 2000, the date on which she underwent an EMG and was "officially" diagnosed with carpal tunnel syndrome, she filed her application for adjustment of claim within the statute of limitations. The arbitrator awarded the claimant temporary total disability benefits for a period of $9^5/_7$ weeks; permanent partial disability benefits for a period of 57 weeks, representing 15% loss of use of her right hand and 15% loss of use of her left hand; and ordered RLI to pay $15,987.24 for necessary medical expenses incurred by the claimant.

RLI sought a review of the arbitrator's decision before the Commission. The Commission, with one commissioner dissenting, reversed the arbitrator's decision, finding that the claimant's condition of ill-being manifested itself in 1997 and, as a consequence, she failed to file her claim within the statute of limitations set forth in section 6(d) of the Act (820 ILCS 305/6(d) (West 2000)).

The claimant sought a judicial review of the Commission's decision in the circuit court of Peoria County. The circuit court confirmed the Commission's decision, and this appeal followed.

■ Before addressing the issues raised by the claimant on appeal, we wish to note that our resolution of this case has been complicated by the claimant's failure to prepare a brief in accordance with the provisions of Supreme Court Rules 341 and 342 (155 Ill. 2d Rs. 341, 342). The statement of facts contained in her brief consists of one short paragraph and fails to set forth all of the facts necessary to an understanding of the case or include references to the pages of the record. 155 Ill. 2d R. 341(e)(6). Additionally, the argument section of the claimant's brief contains no references to the pages of the record relied upon. 155 Ill. 2d R. 341(e)(7). Finally, instead of including a table of contents in the appendix to her brief prepared in accordance with the provisions of Rule 342(a) (155 Ill. 2d R. 342(a)), the claimant

has merely included a Xerox copy of the first page of the record. Although these deficiencies are glaring, and we would have been well within our power to strike the claimant's brief, we choose instead to exercise our discretion and address the issues presented. See *Fender v. Town of Cicero*, 347 Ill. App. 3d 46, 51, 807 N.E.2d 606 (2004). However, we reiterate again that the supreme court rules are not advisory suggestions; they are rules to be followed.

On appeal, the claimant argues that the Commission's finding that her claim was not filed within the applicable limitation period is against the manifest weight of the evidence. She contends that September 8, 2000, the date that the EMG test confirmed that she was suffering from carpal tunnel syndrome, is the date that the condition manifested itself and, as a consequence, the filing of her claim on January 12, 2001, was within the applicable limitation period.

■ Section 6(d) of the Act provides, in relevant part, that a claimant must file a claim for compensation within three years after the date of the accident. 820 ILCS 305/6(d) (West 2000). In the case of *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 531, 505 N.E.2d 1026 (1987), our supreme court held that the date of accident in a case involving repetitive trauma is the date on which the injury "manifests itself." A repetitive trauma injury manifests itself on "the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Peoria County Belwood Nursing Home*, 115 Ill. 2d at 531. The test of when an injury manifests itself is an objective one, determined from the facts and circumstances of each individual case. *Three "D" Discount Store v. Industrial Comm'n*, 198 Ill. App. 3d 43, 47, 556 N.E.2d 261 (1989). The point in time at which both the fact of the claimant's injury and its causal relationship to her employment would have become plainly evident to a reasonable person is a question of fact to be resolved by the Commission. *Oscar Mayer & Co. v. Industrial Comm'n*, 176 Ill. App. 3d 607, 610-11, 531 N.E.2d 174 (1988).

The claimant argues that her injury manifested itself on the date that the EMG test confirmed that she was suffering from carpal tunnel syndrome. However, the test established in *Peoria County Belwood Nursing Home* for determining when an injury manifests itself does not require that a claimant's injury must have been diagnosed by a physician or that a physician have opined that the injury is causally related to her employment. See *General Electric Co. v. Industrial Comm'n*, 190 Ill. App. 3d 847, 857, 546 N.E.2d 987 (1989). Rather, manifestation of a repetitive trauma injury occurs when the fact of injury and causation would have become plainly apparent to a reasonable person. *Peoria County Belwood Nursing Home*, 115 Ill. 2d at 531.

■ In this case, the claimant admitted in testimony before the arbitrator that she knew that she was having problems with her wrists in 1997 and that she told her supervisor that year that she believed that her condition was work-related. Although the claimant stated that she "wasn't sure" that she had carpal tunnel syndrome, she was of the belief that she had the condition and that it was job-related. Based upon that testimony, the two commissioners in the majority found that the claimant's injury manifested itself in 1997 and, as a consequence, the filing of her application for adjustment of claim on January 12, 2001, fell outside the three-year statute of limitations set forth in section 6(d) of the Act.

As noted earlier, the question of when a repetitive trauma injury manifests itself is one of fact to be resolved by the Commission. The Commission's determination on an issue of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). The fact that we might not have reached the same conclusion is not the test of whether the Commission's finding is against the manifest weight of the evidence. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982). Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's finding that the injury for which the claimant seeks recovery manifested itself in 1997. We believe that there is such evidence in this case.

Based upon the foregoing analysis, we conclude that the Commission's finding that the instant claim is time-barred is not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court confirming the Commission's decision in this matter.

Affirmed.

McCULLOUGH, P.J., and CALLUM, J., concur.

JUSTICE HOLDRIDGE, dissenting:

As the majority notes, the seminal case is *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524 (1987). In *Belwood*, the Illinois Supreme Court observed that claimants alleging repetitive trauma injuries must meet the same standard of proof applicable to other accidental injuries. *Belwood*, 115 Ill. 2d 524. Thus, claimants in repetitive trauma cases must allege and prove a single, definable accident. See *Nunn v. Industrial Comm'n*, 157 Ill. App. 3d 470 (1987). The accident date in such cases is the date on which the

injury "manifests itself." *Belwood*, 115 Ill. 2d at 531. The term "manifests itself" indicates "the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Belwood*, 115 Ill. 2d at 531. The test is objective, and each case should be decided from its own facts and circumstances. *Three "D" Discount Store v. Industrial Comm'n*, 198 Ill. App. 3d 43 (1989).

Under the applicable statute of limitations, Durand was required to file her claim within three years of her accident date. See 820 ILCS 305/6(d) (West 2000). Since she filed her application for adjustment of claim on January 12, 2001, the limitations period reaches back to January 12, 1998.

The Commission found that Durand's injury manifested itself before that time. Under the first prong of *Belwood*, the Commission's finding must be supported by evidence strong enough that prior to January 12, 1998, the fact of an injury would have been plainly apparent to a reasonable person in Durand's situation. I see no such evidence in the record.

Although Durand mentioned general pain to her supervisor and a coworker before January 12, 1998, her description and understanding of the pain at that time does not accord with the *Belwood* standard. When she visited Doctor Escorcia in August of 2000, she described the pain as "on and off" for the previous 1½ years. Moreover, she testified that in 1997 her pain "wasn't real constant and real severe." This evidence bespeaks intermittent discomfort; and the intermittent nature of the symptoms left Durand—according to her own testimony—unsure about whether she even had carpal tunnel syndrome. At most, she articulated a mere belief that she had the condition. Consistent with these facts, she never sought medical treatment until August of 2000 (well within the limitations period).

These circumstances are not such that the fact of an injury would be plainly apparent to a reasonable person. Indeed, the circumstances signal periodic discomfort leading to doubt about the existence of a distinct injury.

Since both prongs of the *Belwood* standard must be satisfied to fix an accident date, and the record contains no evidence establishing the first prong, the Commission's decision should be reversed and the arbitrator's decision reinstated. Although Durand had experienced symptoms prior to the limitations period, I agree with Commissioner Sherman's observation:

> "At best, the majority has used the date Petitioner became aware of a *potential disability* as the manifestation date. Their narrow interpretation penalizes her for giving her employer notice of a

potential disability, for not immediately seeking medical attention, and for continuing to perform her regular work for the same employer, notwithstanding a suspicion that she might be developing work related carpal tunnel syndrome."

For these reasons, I respectfully dissent from the majority's opinion.

DONOVAN, J., joins in this dissent.