LOWELL WHITE, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Freeman United Coal Mining Company, Appellee).

Fourth District (Illinois Workers' Compensation Commission Division)
No. 4—06—0566WC

Opinion filed July 5, 2007.—Rehearing denied August 16, 2007.

Peter C. Drummond, of Drummond Law, LLC, of Litchfield, for appellant.

Dennis S. O'Brien, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Lowell White (White) filed an application for adjustment of claim against his employer, Freeman United Coal Mining Company (Freeman United), seeking workers' compensation benefits for alleged repetitive trauma injuries to his "Right and Left Shoulder Impingement/Back." The accident date he alleged in his application was July 17, 2000. Below the line where he put that date, he wrote: "On or About / Last Day Worked."

The matter proceeded to an arbitration hearing where the arbitra-

tor found a compensable injury and awarded benefits. Specifically, the arbitrator ordered Freeman United to pay temporary total disability benefits of $525.35 per week for 54 weeks (July 18, 2000, to July 31, 2001), and permanent total disability benefits of $525.35 per week for life. Freeman United appealed to the Illinois Workers' Compensation Commission (Commission), which unanimously reversed the arbitrator's decision on the grounds that White failed to give Freeman United timely notice of his accidental injuries. White appealed to the Macoupin County circuit court, which confirmed the Commission's decision. White then filed the instant appeal, and we affirm.

## BACKGROUND

At the arbitration hearing, White (62 years old) testified that his last employer was Freeman United and that he worked there for approximately 15 years. This period included nine years of initial employment, followed by another nine years away from Freeman United, and then approximately six more years working there. His last day of work was July 17, 2000. He said he stopped working to undergo right shoulder surgery by Doctor D'Andrea.

In his final years at Freeman United, White was classified as a laborer doing "anything and everything"—roof bolting, running a scoop, driving a tractor, setting props, shoveling, and so forth. In one section of the coal mine, the roof was only $3\frac{1}{2}$ feet high and he had to crawl there for a one-week period while setting props. This occurred approximately five years prior to arbitration. White spent most of his final years at Freeman United working as a roof bolter. That job required setting a canopy, placing a boom, putting a drill bit into the boom, drilling a hole, extracting the bit, and inserting a bolt along with a metal plate to hold the canopy in place. According to White, practically all his work required using his hands overhead or in front of him. His duties included handling heavy bundles of steel plates and bolts, and loading bolts onto a bolter.

When asked if he suffered any particular injuries while working for Freeman United, White mentioned two instances where material from the roof fell and struck him, causing him to leave the mine. The first instance occurred on May 7, 1998, when some slate struck his head and slid down his shoulder and back. He could not recall which shoulder was involved. The second instance was similar and occurred on August 18, 1998, after which he was taken from the mine on a backboard. He filed workers' compensation claims for these accidents alleging injuries to his head, neck and shoulders. The claims were settled for $3,613.40, representing 2% loss of use of the whole person. Aside from these two events White could not recall anything major

happening, although his knees, shoulders and head were always being hit and bumped. He testified that he returned to work and performed his normal job without suffering any additional accidents. He did, however, begin experiencing back and shoulder pain. He said his back hurt during the ride in and out of the mine, and his shoulders began hurting so badly that he stopped using shoulder straps and resorted to a belt only. Overhead work, such as roof bolting, caused his shoulder to be more symptomatic.

White visited Doctor Barnhart, his family practitioner, and was referred to Doctor Trapp for arthritis and Doctor D'Andrea, an orthopedist, for his shoulder and back. In July of 2000, Doctor D'Andrea performed right shoulder surgery (clavicular decompression) and said she did not know if the problem was work related. She had not taken an extensive work history from White at that time. The doctor performed back surgery (L4 laminectomy and L5-S1 fusion) about six months after the shoulder surgery. White received sickness and accident benefits during this period, and Freeman United regularly sent him letters asking when he was returning to work. In May of 2001, White completed a sickness/accident form on which a box was checked stating that his back and upper extremity conditions were not work related. One year into his sickness and accident benefits, he received a letter from Freeman United advising that the benefits were running out and that he needed to resume working or his job would be discontinued. He retired when the benefits ran out. By the time of arbitration, he was receiving social security disability benefits and a pension from the mine.

Regarding his physical abilities, White testified that he used a cane while shopping and sometimes around the house or yard, and he could not carry more than 15 pounds. He could ride in a vehicle for 20 to 30 miles without experiencing problems, and he performed yard work such as mowing the grass with a push mower and tending a small garden. He had to rest after 15 minutes of mowing grass, and his grandsons mowed the back lawn for him.

White said his back and shoulder pain started like any pain, just hurting, but worsened over time to the point where he sought medical treatment. He could not identify any specific date or time when he injured his back or shoulder. Although he had completed accident reports in the past, he did not complete one for July 17, 2000, or report an accident by any other means. He acknowledged having problems with arthritis (knee, hip and hand) prior to 1998 for which Doctor Trapp had rendered treatment. By the time White stopped working in July of 2000, Doctor Barnhart had been treating his arthritic knee problems for quite a while. He continued having bilateral knee and hand problems at the time of arbitration.

In March of 2002, White's attorney wrote a letter to Doctor Barnhart regarding the shoulder and back surgeries. The doctor responded on October 15, 2002, attributing the extensiveness of White's problems to "years of hard manual labor and recurrent traumas related to coal mining." White then filed his application for adjustment of claim on October 29, 2002.

## DISCUSSION

The relevant statutory language reads:

"(c) Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. Provided:

(1) In case of the legal disability of the employee or any dependent of a deceased employee who may be entitled to compensation under the provisions of this Act, the limitations of time by this Act provided do not begin to run against such person under legal disability until a guardian has been appointed.

(2) In cases of injuries sustained by exposure to radiological materials or equipment, notice shall be given to the employer within 90 days subsequent to the time that the employee knows or suspects that he has received an excessive dose of radiation.

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy.

Notice of the accident shall give the approximate date and place of the accident, if known, and may be given orally or in writing." 820 ILCS 305/6(c)(1), (c)(2) (West 2000).

This notice requirement applies to employees who suffer repetitive trauma injuries. *Three 'D' Discount Store v. Industrial Comm'n*, 198 Ill. App. 3d 43 (1989); 820 ILCS 305/6(c)(1), (c)(2) (West 2000) (repetitive trauma not among listed exceptions to notice requirement). In a repetitive trauma case, the employee must allege and prove a single, definable accident. *Three 'D'*, 198 Ill. App. 3d 43. The date of such an accident, from which notice must be given, is the date when the injury "manifests itself." *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 531 (1987). The phrase "manifests itself" signifies "the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Belwood*, 115 Ill. 2d at 531. Regarding notice, the statutory element of undue prejudice to the employer is pertinent only where some notice is given in the first place. See *Fenix-Scisson Construction Co. v. Industrial Comm'n*, 27 Ill. 2d 354, 357 (1963). The purpose of the notice requirement is to enable

the employer to investigate the employee's alleged industrial accident. *Seiber v. Industrial Comm'n*, 82 Ill. 2d 87 (1980).

The Commission's decision will not be reversed on appeal unless it is against the manifest weight of the evidence. *Three 'D'*, 198 Ill. App. 3d 43. A factual decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent from the record. *D.J. Masonry Co. v. Industrial Comm'n*, 295 Ill. App. 3d 924 (1998).

In the instant case, White filed an application for adjustment of claim alleging an accident date of July 17, 2000, or "On or About / Last Day Worked." The record shows that he reasserted an accident date of July 17, 2000, on the "Request for Hearing" form submitted to the arbitrator for purposes of defining the issues to be tried. The Commission could have reasonably concluded that Freeman United did not receive notice of his alleged accidental injuries before or within 45 days after that date.

Although Freeman United knew White was injured before the date in question, the record does not show apprisal of *industrial* injuries. In fact the record tends to show the opposite. In July of 2000, Doctor D'Andrea said she did not know if White's shoulder problem was work related. White received sickness and accident benefits during his time off work instead of filing a workers' compensation claim and seeking temporary total disability benefits. Moreover, in May of 2001 he completed a sickness/accident form on which a box was checked stating that his back and upper extremity conditions were *not* work related. He also acknowledged that although he had filed accident reports in the past, he never filed one for his alleged accident of July 17, 2000. The purpose of the notice requirement is to enable the employer to investigate the employee's alleged industrial accident. Under the instant facts, however, Freeman United had no basis for knowing that any such accident existed to investigate. A conclusion opposite the Commission's decision is not clearly apparent from the record.

We need not address whether Freeman United suffered undue prejudice because, as noted above, the prejudice inquiry does not pertain unless some notice was given in the first place. The instant case does not involve timely but defective notice; it involves a lack of timely notice altogether. On this point, White argues "that surgery in 2000 plus [his placement] on 'sickness and accident' would constitute constructive notice that there was some type of 'injury' *** although not a precise etiology." But an employer's mere knowledge of "some type of injury" does not establish statutory notice—especially where, as here, the claimant submits a form stating that his conditions are not work related. The Workers' Compensation Act, including its notice

provision, applies only to injuries from accidents "arising out of and in the course of the employment." 820 ILCS 305/2 (West 2000).

In his reply brief, White states: "There is absolutely no law and no case cited by [Freeman United] that would indicate in repetitive trauma cases that notice must be given within 45 days of last being exposed (in this case employed) on July 17, 2000." He goes on to argue that filing of his application for adjustment of claim provided timely notice because the filing occurred within 45 days after Doctor Barnhart's October 15, 2002, letter opining that his problems were work related.

It is true that a claimant's last workday is not *ipso facto* his "manifestation date" for purposes of the *Belwood* standard. But the instant case presents a different question because White specifically alleged that July 17, 2000, not October 15, 2002, was his accident date. He cannot argue one date before the Commission and then obtain reversal on appeal by asserting a completely different date. The recent case of *Durand v. Industrial Comm'n*, 224 Ill. 2d 53 (2006), is instructive. In that case, when the claimant filed her application for adjustment of claim, the accident date she alleged was the date on which a doctor diagnosed carpal tunnel syndrome and opined that the condition was work related. White did not do this. Citing *AC&S v. Industrial Comm'n*, 304 Ill. App. 3d 875 (1999), he asserts that his situation is dispositively distinguishable from the *Durand* situation because at the time he received Doctor Barnhart's letter, he was no longer employed by Freeman United. This assertion presupposes that a repetitive trauma accident date cannot occur after the claimant's last day of employment with the respondent. We disagree.

White has repeatedly argued that there is no "specific accident" or "accident date" in repetitive trauma cases. This argument lacks merit in light of the precedent cited above. Moreover, the method for ascertaining the accident date in a repetitive trauma case makes it possible for that date to fall after the claimant's last day of employment. Indeed such a scenario occurred in *AC&S*. Although the claimant was laid off on June 10, 1993, the Commission found that his accident date was June 22, 1993, because "the injury would have become plainly apparent to a reasonable person on this date." *AC&S*, 304 Ill. App. 3d at 878; see also *Belwood*, 115 Ill. 2d at 531 (accident/manifestation date is "the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person"). The Commission's decision was affirmed on appeal.

In the instant case, if White wanted the notice period to begin running on October 15, 2002, he needed to allege that date as his ac-

cident date. It does not matter that his employment with Freeman United had ceased. It would have been no more unreasonable for him to allege a postemployment accident date than it was for the Commission to find one in *AC&S*. In reality, the Commission's finding was not unreasonable at all. The accident date in a repetitive trauma case turns on when certain facts would have become plainly apparent to a reasonable person, and such awareness can arise for the first time after termination of employment.

Viewing the Commission's decision based on the claim White made, the decision is not against the manifest weight of the evidence.

## CONCLUSION

The judgment of the Macoupin County circuit court, confirming the Commission's decision, is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, GROMETER, and DONOVAN, JJ., concur.